## ZALABACK v. CITY OF KINGFISHER.

No. 6968—Opinion Filed June 27, 1916.

(158 Pac. 926.)

**1. Waters and Water Courses—Natural Water Courses—Riparian Rights.**

A riparian owner has a right to an uninterrupted flow of a nonnavigable stream through his premises at its usual and natural height and level.

**2. Same—Obstruction—Actions—Petition.**

A petition which alleges increased depth of such a stream by reason of an obstruction placed therein, which increased depth destroyed the use of a road across said stream and destruction of valuable sand beds with resulting damage, states a cause of action against a general demurrer.

(Syllabus by Linn, C.)

Error from District Court. Kingfisher County; Jas. W. Steen, Judge.

Action by Anton Zalaback against the City of Kingfisher. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

D. K. Cunningham, for plaintiff in error.

John T. Bradley, Jr., for defendant in error.

Opinion by LINN, C. This is a case wherein Anton Zalaback, plaintiff below and plaintiff in error herein, appeals from a judgment of the district court of Kingfisher county sustaining a general demurrer to his petition complaining against the defendant in error, the city of Kingfisher, wherein plaintiff alleged that he was the owner of certain premises situated near the city of Kingfisher and that a certain creek, "Uncle John's creek," by name, flowed through and across said prem-

ises. That said plaintiff was the owner of land on both sides of said creek and that plaintiff had resided thereon since 1891. That for a number of years plaintiff had used and enjoyed said creek and a road crossing, the same leading into a public highway, and used a crossing over said creek. That in the bottom of said creek was located a fine bed of sand, specially suitable for making plaster and cement. That the defendant, the city of Kingfisher, in the year 1913 constructed a dam across said creek below the property of plaintiff, and in constructing said dam caused the water in said creek to back up so as to cause the same to be from two to six feet deeper through plaintiff's premises than the same was prior to the construction of such dam. That, by reason of the increased depth of said water in said creek caused by said dam, the plaintiff was prevented from fording said stream and was deprived of the use of his road leading to the public highway, and that in going to and from the city of Kingfisher he was required to travel a circuitous route, increasing the distance something like four miles. That plaintiff was deprived of the use of the sand beds in said creek and was prevented from taking sand therefrom for the purpose of sale; and that as a result thereof he had been damaged in the sum of $5,000.

The only question necessary to consider is whether or not this petition is good against the general demurrer. It is well settled in this jurisdiction that if any paragraph of a petition states a cause of action, such petition is good against a general demurrer. Sharp Lumber Co. v. K. C. Ice Co., 42 Okla. 689, 142 Pac. 1016; Coody v. Coody, 39 Okla. 719, 136 Pac. 754, L. R. A. 1915E, 465. Therefore we must look to the petition and assume all of the allegations contained therein to be true to determine whether or not said demurrer should have been sustained. It is admitted by all parties in their briefs that Uncle John's creek is a nonnavigable stream. The general rule of the rights of riparian owners is stated in 40 Cyc. 568, as follows:

"Every riparian owner is entitled to have the stream continue to flow through or along his lands in its accustomed channel and natural volume without any obstruction of the channel or detention of the waters by other owners, injurious to him; and he can be deprived of this right only by his own grant or license, actual or implied, or by condemnation for public use under the power of eminent domain. Any obstruction or detention of the waters gives a riparian owner who is injured thereby a right of action, whether or not the result is to destroy or impair his own beneficial use and enjoyment of the stream, or to injure his premises by causing an unnatural enlargement of the stream or the backing up of waters, and regardless of the amount of care which may have been exercised in making the obstruction."

This rule was likewise quoted and applied by the Supreme Court of Kansas, speaking through Justice Brewer, in Shamleffer v. Peerless Milling Co., 18 Kan. 24, the court saying:

"A riparian owner has the right to such benefits as will result from the uninterrupted flow of a stream of water through its natural channel. The maxim of the common law was, Aqua currit et debet currere ut currere solebat. As was said by Lord Ellenbrough in Bealy v. Shaw, 6 East, 206, 'every man is entitled to a stream of water flowing through his land, without diminution or alteration.' In Tillotson v. Smith, 32 N. H. 90 [64 Am. Dec. 355], Bell, J., said: 'Every owner of land situated upon a stream has a right to the natural flow of the stream; a right to insist that the stream shall continue to run ut currere solebat; that it shall flow upon his land in the usual quantity, at its natural place, and at its usual height, and that it shall flow off his land upon the land of his neighbor below in its accustomed place and at its usual level. This right he has as an incident to the property in his land, and he cannot be deprived of it but by grant, actual or presumptive. Whenever, by reason of the interference of the owner above, the water is diverted from his land and made to run elsewhere, or the water of other streams naturally running elsewhere is turned upon his land, or the water of the natural stream is made to flow upon his land at a different place from its natural channel, or at a different level, or in an unnatural manner, * * * the owner of the land may maintain an action for such injury.'"

It seems under this authority that the plaintiff has a legal right to have the stream flow at its usual and natural level along and through his premises, and that, if the city caused the water to back up and increased the depth to plaintiff's injury, the city would be liable therefor. The petition alleges that plaintiff was compelled to go a more circuitous route to and from the city of Kingfisher, which covered a distance of four miles further than was necessary to travel before the increased depth of said stream. Assuming this allegation to be true, which we must do under the demurrer, we cannot say that plaintiff was not damaged thereby. In International & G. N. R. Co. v. Walker, 97 S. W. 1081, the Court of Appeals of Texas used the following language, after quoting a refused special charge:

"This charge was properly refused. It ignored the second count in the petition—that the obstruction caused the water to stand in the creek and deposited dirt therein, so that plaintiff was unable to cross the creek to cultivate his land on the west side thereof, but required him to take a more circuitous

route to reach the same, thereby injuring him. If the obstruction in the creek and the overflow of April, 1904, or either, caused a deposit of dirt in the creek and the water to stand therein, so that plaintiff could not cross the same, and injured him, he was entitled to damages for such overflow."

It seems from this authority that the allegations of the petition were sufficient as against a general demurrer. It is contended, however, by counsel for defendant, that section 473 of the Harris-Day Code gives municipalities the right to dam any river or stream not navigable, for the purpose of constructing and operating water works thereon. We have carefully reviewed this section, and cannot place the construction thereon contended for. No doubt the section gives a municipality the right to erect and construct water works and to dam any nonnavigable stream, but we cannot construe such section as giving the right to such municipality regardless of any injury that it may do the property of others and say that a municipality could exercise such a right and not be responsible as any other person for damage. In fact, the section provides that a municipality shall have power "to condemn and appropriate", which necessarily implies that the municipality shall pay for any injury done or any property taken. It follows that the judgment of the trial court sustaining the general demurrer should be reversed and the cause remanded.

It is so ordered.

By the Court: It is so ordered.