## BURKETT v. BAYES.

No. 9261—Opinion Filed Dec. 10, 1918.

On Rehearing, Jan. 27, 1920. Second Petition for Rehearing Denied March 30, 1920.

**1. Waters and Water Courses—Right of Riparian Owner to Natural Flow.**

Every riparian owner upon water flowing in a defined channel so as to constitute a water course has the right to insist that the water shall continue to run as it has been accustomed, and no one can change or obstruct its course injuriously to him without being liable.

**2. Same—Right of Riparian Owner to Change Channel.**

A riparian owner may change the channel of a water course upon his own premises,

provided he causes the water to be returned into the original water course before it leaves his premises.

### 3. Same—Surface Water—Diversion.

As to surface water each proprietor may divert the same, cast it back upon or pass it along to the adjacent proprietor, provided he can do so witho it injury to such adjoining proprietor.

### 4. Same—Right of Upper Proprietor—Injunction.

B. constructed a levee upon his lands to ward off surface waters, which levee obstructed the flow of no natural water course and occasioned no damage to the upper proprietor until said upper proprietor diverted the water from the natural water course into an artificial channel which emptied upon the lands of B. and against such levee without the water being returned to the original channel of the water course. Held, that the upper proprietor is not entitled to restrain by injunction the repairing and maintenance of such levee, though such levee may obstruct and throw back upon his premises the water flowing through said artificial channel.

### 5. Same—Judgment—Evidence.

Evidence examined, ar 1 held that the judgment of the trial court is against the weight thereof.

(Syllabus by Rummons, C.)

Error from District Court, Lincoln County; Charles B. Wilson. Jr., Judge.

Action for injunction by J. H. Bayes against George E. Burkett. Judgment for plaintiff, and defendant brings error. Reversed, with direction to dissolve the injunction and dismiss the petition.

F. A. Rittenhouse, for plaintiff in error.

Opinion by RUMMONS, C. We have not been favored with a brief on behalf of defendant in error in this case, and we might reverse the judgment and remand the cause for new trial under rule 7, but an examination of the brief of plaintiff in error and of the record leads us to the conclusion that the judgment of the trial court was erroneous upon the evidence, and that this cause should be determined upon its merits. The parties will be herein designated as they appeared in the court below.

The plaintiff, Bayes, commenced an action in the district court against the defendant, Burkett, to recover damages for the construction and maintenance of a levee upon the land of the defendant immediately north of the land of plaintiff in Lincoln county, and at the same time he commenced this action to enjoin and restrain the defendant from rebuilding and continuing to maintain said levee. This cause was determined by the court upon the evidence offered at the trial of the suit for damages. The court found for the plaintiff, and permanently enjoined the defendant from repairing and maintaining the levee. To reverse this judgment the defendant prosecutes this proceeding in error.

It appears from the evidence that the plaintiff was the owner of the northwest quarter of section 3, township 13 north, range 4 east of the Indian meridian, and that the defendant was the owner of the southwest quarter of section 34, township 14 north, range 4 east of the Indian meridian, all in Lincoln county; that the land of the plaintiff joined the land of the defendant on the south; that one Buckner owned the quarter just east of plaintiff; that one Miller owned the quarter just east of defendant; that one E. E. Matson owned the quarter just east of Miller; that between the plaintiff's land and the defendant's land was a section line which had been opened up as a public highway running east and west. The evidence shows that in 1902 W. K. Gayman, then the owner of the defendant's farm, built and constructed the levee or embankment here in controversy along the south side of the southeast 40 of the defendant's farm; that the levee was about 40 feet north of the section line and was about 200 yards in length; that the levee was still located on the south side of the said 40, and had been maintained since its original construction in 1902; that there were no depressions or water courses on the defendant's farm north of the levee complained of, and that all of said farm from the levee to the Ft. Smith & Western Railway embankment, running east and west across defendant's northeast 40, was smooth and level land with the exception of the extreme southeast corner thereof. The evidence shows that defendant homesteaded his land, and has owned the same continuously from the time he settled thereon; that he knew that W. K. Gayman had built and constructed the levee complained of in the year 1902; that prior to the construction of the Ft. Smith & Western embankment and prior to the construction of the levee on the south side of defendant's farm there was a natural water course originating from four smaller courses south of plaintiff, which smaller courses came together in one natural water course about the center of the south line of the northeast 40 of the Bayes farm; that from that point said natural water course extended north and east leaving the Bayes 40 about 30 steps from his northeast corner and about the same distance from defendant's southeast corner; thence across the extreme southeast corner of defendant's 40; thence nearly east across

Miller's farm; from Miller's east on to Maston's farm; thence in a northeast direction through an opening or trestle on the railroad embankment, and thence to Deep fork. In 1909 the plaintiff constructed an artificial channel or ditch, beginning at the point upon the south line of plaintiff's northeast 40 where the said water courses joined, running due north from said point to the section line. After this ditch was constructed, there being no outlet for the water coming through said ditch, the then owners, of defendant's farm dug a ditch along the south side of the levee in question and carried the water east, just north of the section line, until it united with the natural water course running through the southeast corner of the plaintiff's farm. The evidence shows that the ditch constructed by plaintiff in 1909 was some considerable distance west of the original water course before mentioned, and that before the construction of said ditch by the plaintiff in times of high water and extraordinary rains, the water from the natural water course would overflow and stand in pools along the course of said ditch, but that in times of ordinary rains the natural water course was sufficient to and did carry off all the water coming through said course. The evidence further shows that just before the commencement of this action there had been an exceptionally heavy rainfall, and that the waters coming down through the artificial channel, as constructed by plaintiff in 1909, came with such force that it broke through the levee or embankment on the south side of defendant's farm, causing two breaks in the levee, and this suit was instituted for the purpose of enjoining the defendant from rebuilding and further maintaining the levee. The evidence shows also that before the construction of the ditch by plaintiff in the year 1909 no injury had resulted to plaintiff by reason of the construction of the levee on the defendant's farm.

From this evidence the trial court found:

"That all the bottom land south of the aforesaid levee or embankment is a water course, and that the defendant should be enjoined from obstructing the flow of the water in a northerly direction."

There is no finding that there was any water course north of the levee, or that said levee obstructed the flow of any natural water course.

In the case of Chicago, R. I. & P. R. Co. v. Groves, 20 Okla. 101, 93 Pac. 755, 22 L. R. A. (N. S.) 802, this court says:

"Where the common law prevails, every proprietor, upon water flowing in a defined channel, so as to constitute a water course, has the right to insist that the water shall continue to run as it has been accustomed, and no one can change or obstruct its course injuriously to him without being liable to damages.

"Surface water flowing naturally or falling upon the soil may be diverted in its course, and even thrown back on the dominant estate whence it came, but with certain qualifications.

"The exercise of such right by a lower proprietor must be reasonable, for proper purposes, in good faith, and with due care to inflict injury only when necessary.

"The doctrine that the right may not be exercised wantonly, unnecessarily, or carelessly is common-law doctrine, resting upon the common law, as well as upon the civil law.

"A class of cases, based upon the adoption of the old common-law rule, hold without qualification that no cause of action can arise from throwing back surface waters upon the land of the dominant estate; but this is not supported by the weight of common-law authority.

"The weight of authority in England and in the United States, though the cases are often difficult to reconcile, supports the proposition that one must so use his own property with due regard to the rights of another.

"Where the surface water has been accustomed to gather and flow along a well defined channel, which by frequent running it has worn or cut into the soil, so as to have well-defined banks, it may not be obstructed to the injury of the dominant proprietor.

"Where the natural conformation of the surrounding country necessarily collects therein so large a body of water, after heavy rain or the melting of large bodies of snow, as to require an outlet to some common reservoir, and where such water is regularly discharged through a well-defined channel which the force of the water has made for itself, and which is the accustomed channel through which it flows or as ever flowed, it constitutes a water course or waterway."

The rule is well established that the riparian owner may cause the channel of a water course to be changed upon his own premises, providing he causes the water to be returned into the original water course before it leaves his premises. As said in Chicago, R. I. & P. R. Co. v. Groves, supra, every proprietor upon a water course has the right to insist that the water shall continue to run as it has been accustomed. In the instant case the plaintiff undertook to and did divert the water from the natural water course into an artificial ditch without returning the same to the original channel of the water course before leaving his premises. The evidence shows that the de-

fendant's grantors were compelled to and did dig another ditch along the south side of the defendant's farm in order to restore the water coming down this ditch to the natural water course. It appears from the evidence that the damage to plaintiff, if any, resulting from the maintenance of this levee, was occasioned by his diversion of the water from the natural course into the artificial ditch.

In the case of Gulf, C. & S. F. R. Co. v. Richardson et al., 42 Okla. 457, 141 Pac. 1107, this court says:

"An injunction should not be issued to restrain one proprietor from diverting surface water from his lands or passing it on to the next proprietor, unless the evidence clearly shows that injury will result to the adjoining proprietor.

"At common law surface water was regarded as a common enemy, against which each proprietor might protect himself. He might send it back or pass it on to the next adjoining proprietor without liability.

"The common law governing the diversion of surface water as adopted and applied in this state has been modified and restricted to this extent, namely, that each proprietor may divert the same, cast it back, or pass it along to the next proprietor, provided he can do so without injury to such adjoining proprietor. Under this rule of law no one is permitted to sacrifice his neighbor's property in order to protect his own."

It is apparent from the record that before the construction of the ditch by the plaintiff the levee complained of served only to ward off from the property of the defendant the surface water flowing northward, and that no damage was occasioned thereby to the property of the plaintiff. In this, the grantor of defendant who constructed the levee was within his rights, and if such levee afterwards occasioned damage to the plaintiff, it was because of the acts of the plaintiff in diverting the water from the natural water course and throwing it upon the land of the defendant without an outlet.

It is said by counsel for defendant that this cause was determined by the trial court upon the following syllabus in the case of C., R. I. & P. R. Co. v. Morton, 57 Okla. 711. 157 Pac. 917:

" 'A water course,' in the legal sense of the term, does not necessarily consist merely of the stream as it flows within the banks, which form the channel in ordinary states of water; but it includes the overflow waters of such streams, which extend beyond its banks in times of ordinary floods, and which at such times are accustomed to flow down over the adjacent low lands in a broader, but still definable, stream, or flow in natural de-pressions, continuing in a general course, though without definable banks, back into the stream from whence they started, or into another water course."

This syllabus was prepared by the editorial staff of the Pacific Reporter, and not by the court, and embodies an instruction given by the trial court in that case which was held not to be erroneous under the facts of that case It will appear, however, from a reading of that case, which was an action for damages for obstructing a water course, that the question presented to the jury was whether or not the waters obstructed and doing the damage were surface waters or waters running in a natural water course, and the instruction which is set out in the syllabus was held to be a correct statement of the law as applied to the facts in that case, and that—

"Overflow waters, that continue in a general course, although without defined banks, back into the water course from which they started, or into another water course, do not become surface waters, but remain a part of the water course."

In the instant case the record shows that the plaintiff had not only constructed an artificial ditch to carry the water out of the natural water course, but had thrown logs, roots, and trash into the bed of the natural water course, so as to fill and choke it up and clog and prevent the flow of the water therein, and that the waters breaking the levee in the instant case and doing the damage complained of did not flow in the general course of the original water course from which they came, and did not return to said water course. The case of C., R. I. & P. R. Co. v. Morton, supra, therefore has no application to the facts in this case, since it does not appear that the waters occasioning damage to the plaintiff because of the obstruction by the defendant's levee were a part of any natural water course, but, on the contrary, it does appear that they were collected by the plaintiff into an artificial ditch constructed by him and thrown upon the property of the defendant.

We therefore conclude that the plaintiff established no equity entitling him to relief, and that the judgment of the trial court should be reversed, with directions to dissolve the injunction granted and dismiss the petition of plaintiff.

### On Rehearing.

PER CURIAM. Petition for rehearing in this case · was heretofore granted and the cause has been reheard on oral argument and briefs submitted; and after further consider-

ation of the evidence and authorities in the case, the court is of the opinion that the former decision is correct, and the opinion of the commissioner filed December 10, 1918, is adopted as the opinion of the court in this case