## CITY OF KINGFISHER v. ZALABAK.

No. 9541.--Opinion Filed Jan. 20, 1920.

(Syllabus by the Court.)

1. **Waters and Water Courses—Damages to Riparian Owner from Construction of Dam for City Waterworks—Liability of City.**

If a municipal corporation, in the exercise of its corporate power to construct and maintain public works, raises a dam across a nonnavigable stream in order to secure water for waterworks purposes, and thereby increases the depth of the water on the premises of a riparian owner, causing permanent injury to such premises, it is liable to said owner for all damages proximately resulting to him therefrom.

2. **Same—Permanent Injury—Measure of Damages to Land.**

In case of a permanent injury to the real estate of such owner under such circumstances the true measure of damages for such injury is the difference in the market value of the property before and after the construction of such improvement.

3. **Same—Evidence as to Damages.**

Where there is a conflict in the evidence as to whether the market value of the riparian owner's real estate has diminished in value by reason of the construction of such improvement, it is proper for the jury, in determining such question, to take into consideration the uses made of, and the revenue derived from, the land before the elevation which were either destroyed or impaired by the increased volume of water.

4. **Appeal and Error—Questions Reviewable —Costs.**

Alleged error in the assessment of costs is not a ground for reversal, and where the question is not presented in the trial court, it will not be considered on appeal.

Error from District Court, Kingfisher County; J. C. Robberts, Judge.

Action by Anton Zalabak against the City of Kingfisher, Oklahoma. Judgment for plaintiff, and defendant brings error. Affirmed.

C. L. Billings, for plaintiff in error.

D. K. Cunningham, for defendant in error.

RAINEY, J. In 1895 the city of Kingfisher, Oklahoma, constructed a dam across a stream known as "Uncle John's Creek," thereby creating a reservoir of water for the use of said city and its inhabitants. This dam backed up water in said creek to a limited extent on the land of Anton Zalabak, who, about that time, became the owner of a large tract of land about one mile south of the reservoir. Sometime during the year 1913, in order to increase its water supply, the city raised the dam about three or three and one-half feet, which Zalabak claimed backed the water up on his land from the north to the south side thereof to a depth of from two to six feet, thereby greatly depreciating the value of his land. This action was thereafter instituted by him, as plaintiff, against the city of Kingfisher, as defendant, to recover for the damages thus alleged to have been suffered by him. The city denied its

liability for such alleged damages, and the question came before this court on appeal from an order sustaining a demurrer to Zalabak's petition, where the order of the trial court was reversed and it was held that he was entitled to recover upon proof of the facts alleged in his petition. Zalabak v. City of Kingfisher, 59 Okla. 222, 158 Pac. 926. After the cause was remanded, issue was joined by the defendant, and upon trial to a jury Zalabak recovered damages in the sum of $2,000. To reverse this judgment, the city of Kingfisher has appealed. The parties will hereinafter be designated plaintiff and defendant.

It is first asserted that, although plaintiff's action was one for damages to his real estate, he was permitted to prove damages to specific personal property, and that, under the court's instructions, the jury was led to believe that it should also compensate the plaintiff for any injury suffered by him to his personal property. We agree with counsel for the city that the measure of damages, in cases of this character, for permanent injuries to realty is the permanent depreciation of the realty in value in consequence of such injuries. City of Ardmore v. Orr, 35 Okla. 305, 129 Pac. 867; Town of Norman v. Ince. 8 Okla. 412, 58 Pac. 632; Armstrong et al. v. May et al., 55 Okla. 539, 155 Pac. 238. And certainly it would have been error for the court, without any pleading to that effect, to have permitted the plaintiff to recover for any damages to specific personal property. An examination of the record, however, discloses that plaintiff was not permitted to recover such damages. and the court, in ruling upon the admission of evidence and in instructing the jury, made it perfectly clear to the jury that it should not allow plaintiff anything for any damages to his personal property. The court. in part, instructed the jury as follows:

"You are instructed that if you find that the defendant increased the height of the dam mentioned in the plaintiff's petition, on or about the time mentioned therein, and that by reason thereof the water in the channel of the creek was caused to back up on the premises of the plaintiff. and you further find by a preponderance of the evidence that the premises of the plaintiff described in the petition were injured thereby. and that by reason thereof the market value of his land was diminished, and the plaintiff damaged thereby. your verdict should be for the plaintiff: and in this connection, you are further instructed that if you find for the plaintiff. the measure of his damage. which means the amount of his recovery. should be the difference in the market value of the land described prior to the raising of the dam in 1913 and its value thereafter caused by the increased height of said dam, if any, without regard to any general increase or depreciation in the value thereof from any other cause or source; and in arriving at the difference in the value of said land, if any, you may take into consideration the effect of the backing up of the water on the premises had upon the sand beds in the creek on said premises, if any, the inconvenience, if any, you find the backing up said water had or might have in the use of the fords or crossings on the creek on plaintiff's premises, the increase, if any, of the distance the plaintiff would be compelled to travel in going to and from the city of Kingfisher, or his nearest market, the effect, if any, it had in the use of the pasture on said premises, the effect it had, if any, on the banks of the creek—the washing away of trees and soil from said premises, if any, and such other matters and things as you may find was the direct and proximate result, if any, tending to increase or decrease the market value of said premises, and allow him such amount as you may find will compensate him for the detriment caused thereby, but you will not allow the plaintiff any damage caused by said dam prior to the raising thereof in the year 1913.

"You are instructed that you cannot allow the plaintiff special damages for any specific or particular item of injury, if any, he may have sustained by reason of the backing up of said water; but you may consider all such specific and particular items and matters mentioned in the foregoing instruction, for the purpose only of arriving at the difference in the market value of the land prior to the raising of said dam and its market value thereafter."

The preceding paragraphs of the court's instructions are the identical ones which it is asserted misled the jury. It seems to us that they are eminently fair and correct as applied to the evidence in this case, which disclosed that prior to the reconstruction and raising of the dam plaintiff made several uses of his land. He was a raiser of hogs, and had hog pastures and lots extending to the water of the creek so that his hogs could get the water from the creek. The backing up of the water prevented the further use of the lots and he was compelled to remove the fences. On both sides of the creek were large sand banks from which, prior to the reconstruction, the plaintiff sold sand to a number of the inhabitants of Kingfisher. According to the testimony, he realized from this source from $50 to $200 a year. After the dam was elevated, the water deposited mud on and covered the sandbeds, thereby rendering them valueless for commercial purposes. The increased depth of the water in the creek also compelled plaintiff to discontinue raising colts and cattle on account of the place having been rendered dangerous to his stock, which was evidenced by the

fact that a number of his cattle and colts were drowned by the high water. When this evidence was admitted the court admonished the jury that it could only be considered for the purpose of showing in what way the previous use of his premises had been destroyed and its value thereby depreciated, but did not permit the witnesses to testify to the value of the cattle or colts as an element of damage. The creek divided plaintiff's farm, a large part of his cultivatable land being on the opposite side from his house and barn. Previous to the elevation of the dam he could ford the creek, making it possible for him, with little inconvenience, to cultivate the land on the other side; but after the elevation the water was so high it was impracticable to ford the creek, necessitating his going a circuitous route of about four miles with his work tools and farming implements.

There was a decided conflict in the testimony of real estate men and others as to whether plaintiff's land was rendered less valuable by the elevation of the dam, and we think, under these circumstances, it was perfectly proper for the jury to consider, in determining whether or not his land had depreciated in value, the uses to which it had been put before the elevation and which the overflow of the water had destroyed.

The testimony of plaintiff's witnesses was to the effect that the 285 acres involved had depreciated an average of from $10 to $20 an acre. There being evidence in the record reasonably tending to support the verdict of the jury, it will not be disturbed on the weight of the evidence.

Error is also alleged in the refusal to give two requested instructions, which we have examined, and find, in so far as they are applicable to the issues in the case, to be covered by the main charge.

It is also urged that the court erred in rendering judgment against the defendant for costs, for the reason that the plaintiff did not file a claim against the city as provided by section 603, Rev. Laws 1910. This is not a ground for reversal and, inasmuch as the matter was not presented to the trial court and it given an opportunity to rule thereon, the alleged error will not be considered here. If, in fact, the costs were erroneously assessed against the defendant, the matter may be presented to the trial court on a motion to retax.

Finding no reversible error in the record, the judgment is affirmed.

OWEN, C. J., and KANE, JOHNSON, and McNEILL, JJ., concur.