**BROADY v. FURRAY.**

No. 21524. Opinion Filed May 2, 1933.

John H. Wright and C. J. Blinn, for plaintiff in error.

J. S. Estes, for defendant in error.

OSBORN, J. This is an appeal from the district court of Oklahoma county from an order granting a permanent injunction. The action was filed by H. M. Furray against A. E. Broady to obtain an injunction enjoining the defendant from going upon the lands of plaintiff and removing a fill or natural dam in an old river channel of the North Canadian river.

The parties will be referred to as they appeared in the trial court.

The action involves certain lands located in sections 4 and 5, township 11 north, range 4 west, in Oklahoma county, which is low bottom land lying adjacent to the North Canadian river.

The record shows that the river originally formed a large loop, entering section 5 on the west side, running in a northeasterly direction, thence in an easterly direction, curving back to the south and running through the lands involved in a south and southwesterly direction; that in 1910 a cutoff drainage ditch was constructed, starting at the west side of section 5, running in a southeasterly direction, approximately three quarters of a mile to intersect the original channel of the river. The main channel of the river was thereby diverted, and the old channel of the river abandoned, except that the old channel was used as a natural drain for certain lands lying to the north and east.

The record shows that the lands of plaintiff are located on both sides of the old channel, and that the lands of defendant are adjacent to the plaintiff's land, immediately north and east.

In 1923 an unusual flood occurred and resulted in depositing sediment near the mouth of the old channel about three feet in depth, thereby forming a natural pond or lake in the old river channel on plaintiff's land about four or five feet deep, covering about 10 acres; that plaintiff took advantage of this lake or pond by establishing a fish hatchery and a fishing resort; that he constructed a park on the land and charged admission for fishing privileges, thereby creating an annual income of from $300 to $500. The record shows that, on December 3, 1927, the defendant went upon plaintiff's land with scrapers and teams, and started to remove the natural dam which is referred to as the "drift dam," and the plaintiff immediately secured a temporary injunction prohibiting defendant from removing said dam, which injunction was thereafter made permanent.

The evidence on behalf of defendant is to the effect that the water backed up into

the old river channel by the dam percolates or seeps out underneath his land; that by making various tests, it is shown that the water stands under his land at all times at the same level of the water in the lake or pond thus formed, these tests showing that the water is found from 10 inches to three feet from the surface of his soil; that his crops are thereby injured and damaged, and that since 1923 he is not able to raise crops as good as they were before that time, except in dry years. It is shown that since 1923 there has been no overflow of the old channel, and defendant does not contend that the drift dam causes the land to overflow, but that it does cause the water to seep out under his land at a higher level than it would if said drift dam were removed.

Section 11785, O. S. 1931 (sec. 8439, C. O. S. 1921), provides:

"The owner of the land owns water standing thereon, or flowing over or under its surface, but not forming a definite stream. Water running in a definite stream, formed by nature over or under the surface, may be used by him as long as it remains there; but he may not prevent the natural flow of the stream, or of the natural spring from which it commences its definite course, nor pursue nor pollute the same."

Under the evidence herein, the stream involved is a definite stream, and both plaintiff and defendant have reciprocal rights. Each is entitled to a reasonable use of the stream. Under the evidence herein it appears that their interests are diverse. Plaintiff contends that to destroy the natural fill or dam would be to destroy his fishing resort and fish hatchery; that through his industry in building a park, stocking the stream with fish, and the incurring of some expense, he has created a form of business which returns a profit; that more than four years elapsed from the time of the formation of the drift dam until the attempt of defendant to remove it. It is evident that should defendant prevail herein, plaintiff would suffer considerable damage and pecuniary loss. It is not charged that plaintiff built the dam, or that he was guilty of malice or bad faith, or that he was exercising his rights in a careless and wanton manner.

The record shows that one C. R. Donart performed some experiments on defendant's lands by digging holes at various places on the lands, and found water at the same level as the level of the water in the old channel, and at different depths depending on the surface undulations of the land.

The trial court made no special findings of fact. This court will assume, however, that the trial court found sufficient facts in favor of plaintiff upon which to base the judgment, and that the court found, in effect, that to remove the drift dam would result in a greater loss to plaintiff than its removal would profit the defendant. Such a conclusion is not against the clear weight of the evidence.

The defendant contends that section 6074, C. O. S. 1921 (Stat. 1931, sec. 13039), provides the proper procedure in this case, and that he was operating under the provisions of said section at the time the restraining order was served on him; that one A. J. Henthorne was drainage commissioner of drainage district No. 3, and that he executed a notice in conformity with the statute which was served upon plaintiff, which gave defendant the right to go upon the land of plaintiff, and, at his own expense, remove the drift dam.

The lands of both plaintiff and defendant were embraced within a drainage district established in 1910, which is now referred to as district No. 3, which resulted in the construction of the cut-off drainage ditch above referred to, but it is not shown that the old river channel was designated as a lateral drain to the principal drainage ditch. The procedure outlined by the above section of the statute would, therefore, have no application herein, for the reason that the old river channel was not constructed by the district, and is not designated as a lateral drain.

Since the judgment of the trial court is not against the clear weight of the evidence, the cause is affirmed.

CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, and BAYLESS, JJ., concur. RILEY, C. J., and BUSBY and WELCH, JJ., absent.