## GREIS, Trustee, v. HARJO.

No. 28845.  Oct. 3, 1939.

W. F. Semple, H. F. Aby, H. L. Fitzgerald, Jr., and Phillips & Long, for plaintiff in error.

Harry Stephenson and Clem H. Stephenson, for defendant in error.

RILEY, J.  This is an appeal from a judgment in favor of defendant in error in an action for damages to real property alleged to have been caused by the pollution of a stream running through the land and casting salt water thereon from an oil or gas well.

The parties will be referred to as plaintiff and defendant, as in the trial court.

Plaintiff's amended petition upon which the cause was tried alleged:

"That the salt water and oil field refuse from the said oil and gas wells has permanently damaged and injured ten (10) acres of plaintiff's land and has caused the same to become infertile, unproductive and unfit for any agricultural use. That the said salt water and refuse has killed and destroyed approximately seventy-five (75) bearing pecan trees upon the plaintiff's land and has killed and ruined all other growing timber along the bank of the creek which flows through the plaintiff's land. That the said refuse and salt water has ruined and rendered unfit for use all of the water for domestic and stock use upon said premises, making it necessary for the occupants of said farm to haul water. That the value of plaintiff's farm—as a result of the said pollution, damage to the land, destruction of the pecan trees and timber, and damage to the water upon said farm—been reduced in the sum of $2,950, for which sum the plaintiff is entitled to judgment against the defendants, both jointly and severally."

It was stipulated at the trial that H. N. Greis was appointed trustee for the Deep Rock Oil Corporation on June 19, 1934.

This action was commenced July 17, 1937. Trial was had March 4, 1938. Evidence was restricted to injuries alleged to have occurred after June 19, 1934, upon the theory that Greis, as trustee, would not be answerable for wrongful acts, if any, of the Deep Rock Oil Corporation committed prior to said date.

Trial was had to a jury, resulting in a verdict and judgment for plaintiff in the sum of $325.

Defendant contends that there was no evidence whatever upon which to base the instruction given by the trial court on the measure of damages.

Instruction No. 7 told the jury:

"You are instructed that it is the contention of plaintiff in this case that his land has been permanently damaged in that growing trees, orchards and vegetation have been killed by the wrongful act of the defendants in permitting oil and salt water to flow over the lands of the plaintiff; and if you find from a fair preponderance of the evidence in this case that the allegations of the plaintiff's petition are true, then the measure of damages for which the plaintiff could recover judgment would be the difference in the fair market value of the lands immediately before the permanent injuries to the same, and the

fair market value of the land immediately thereafter. And in no event could you return a verdict for a sum greater than the market value of the land at the time same was permanently injured."

Again, in No. 11, the court instructed the jury:

"You are instructed that in the event you find for the plaintiff, you will in your verdict assess the amount of his damages, if any, and the measure of his damages, if any you find from the evidence, will be the difference, if any, in the fair and reasonable market value of plaintiff's said lands immediately prior to the injuries thereto and their fair and reasonable market value immediately after said injuries thereto, in no event, however, to exceed the total sum sued for on account thereof, to wit: $2,950."

There was no evidence whatever placing a value upon plaintiff's land or any part thereof immediately before nor immediately after the alleged injuries, nor at any time.

It has been repeatedly held that where damage to land is permanent, the measure of damages is the difference between the fair cash market value of the land immediately before the damage and immediately thereafter. Mid-Continent Pet. Corp. v. Fisher, 183 Okla. 638, 84 P.2d 22; Oklahoma Ry. Co. v. Bernard, 169 Okla. 381, 37 P.2d 272; Chicago, R.. I. & P. Ry. Co. v. Kahl, 168 Okla. 578, 35 P.2d 731; City of Kingfisher v. Zalabak, 77 Okla. 108, 186 P. 936. But if there be no evidence on the question of such decrease in value, there is nothing upon which to base such instruction.

Plaintiff contends, however, that since there was evidence tending to prove the destruction of 70 or 75 pecan trees growing upon the land, and evidence tending to prove the value of bearing pecans to be from $5 to $50 each, depending upon their size, there was evidence sufficient to support the verdict. In this connection he cites Armstrong v. May, 55 Okla. 539, 155 P. 238. Therein it is said:

"The true measure of damages for injuries to real estate is the difference in the market value of the real estate just before and just after the injuries complained of; but this rule, however, is subject to the exception that if that destroyed, although it is a part of the realty, has a value without reference to the soil on which it stands, or out of which it grows, a recovery may be of the value of the thing destroyed, and not for the difference in the value of the land before and after such destruction."

He also cites Producers Supply Co. v. Maple Leaf Oil Co., 103 Okla. 224, 229 P. 1037, where the above from Armstrong v. May, supra, was quoted with approval; and City of Oklahoma City v. Stewart et al., 76 Okla. 211, 184 P. 779, where the same statement is quoted with approval. Bearing pecan trees are, of course, a part of the soil, out of which they grow. It is entirely proper to take into consideration growing pecan or other trees in arriving at the value of the land upon which they grow. They may lend increased value thereto. Their destruction may decrease the value of the land. The ultimate question is the decreased value of the land because of the destruction of the trees.

The difficulty in applying the rule or rather the exception to the rule relied upon in this case is that there is no evidence showing the number of pecan trees claimed to have been destroyed by the pollution of the stream after June 19, 1934.

There was evidence to the effect that from 70 to 150 pecan trees on plaintiff's land died sometime between 1928 and 1936. The stream in question had been polluted for that long and many of them died prior to June, 1934. But no witness attempted to say how many trees were killed or died after June 19, 1934.

The jury might have made a fair guess at how many trees died after June 19, 1934, but at best it was a mere speculation.

This being the record, we hold that there was no evidence upon which to base the instructions given on the measure of damages, and no instruction was given on the basis of the value of the pecan trees destroyed.

The judgment is reversed and the cause is remanded, with directions to grant the defendant a new trial.

BAYLESS, C. J., and HURST, DAVISON, and DANNER, JJ., concur.