SMITH et al. v. STANOLIND OIL & GAS CO. et al.

No. 32176. Oct. 1, 1946.

*172 P. 2d 1002.*

W. Custer Service, of Edmond, for plaintiffs in error.

Donald Campbell and Ray S. Fellows, both of Tulsa, for defendants in error.

GIBSON, C. J. Plaintiffs in error were plaintiffs and defendants in error defendants in the trial court, and here-

inafter they will be referred to as plaintiffs and defendants, respectively.

This controversy is over use of waters of Wolf Creek, which flows through lands owned by defendants T. N. Delbridge and Walter Delbridge onto and through lands owned by plaintiff Georgia Smith of which Jess L. Wickett, her coplaintiff, is tenant.

Defendant Stanolind Oil & Gas Company, under a lease contract with defendants Delbridge, erected a dam on the creek on their premises and pumped water therefrom to be used in drilling operations beyond said defendants' premises. And plaintiffs, alleging they would suffer irreparable damage to their farming and stockraising if the practice were continued, sought a permanent injunction against the obstruction of the watercourse and the taking of waters therefrom by the defendant company.

Previous to trial and with consent of defendants a restraining order was issued enjoining defendants from taking water beyond a limit necessary to provide water for plaintiffs' livestock and farming operations. After trial the court made its findings and awarded judgment of which we quote the following as material to this appeal:

"The court further finds that the Plaintiffs are not entitled to equitable relief further than has heretofore been granted for the reason that under the Law of this State Riparian owners are each entitled to the reasonable and unobstructed use of water and that the question of what is or what is not a reasonable use is one to be determined by a jury in a Law action rather than in a strictly equitable proceeding.

"The Court finds, however, from the evidence and under the law that neither party has the right to complete and absolute use of the water flowing in Wolf Creek, and the defendant is enjoined and restrained from using, or constructing barriers or diverting this water in such manner as will cause the plaintiff to be deprived of the use of the water for domestic use and for the use of

approximately forty-five head of stock now on the premises."

It is the contention of plaintiffs on this appeal that the court should have awarded an injunction against the obstruction of the natural flow of the stream by the dam and against the transportation of waters therefrom for nonriparian purposes, and that they are aggrieved by the failure of the court so to do.

In support of the contention concerning the obstruction reliance is placed upon the provisions of 60 O.S. 1941 §60, and the holdings of this court in Chicago, R. I. & P. Ry. Co. v. Groves, 20 Okla. 101, 93 P. 755, 22 L.R.A. (N.S.) 802; Zalaback v. City of Kingfisher, 59 Okla. 222, 158 P. 926; Burkett v. Bayes, 78 Okla. 8, 187 P. 214, and others, and in support of the contention touching removal of waters for nonriparian purposes it is asserted that defendant company occupies the position of a trespasser to whom riparian rights do not attach, and citing as authority therefor 67 C. J. 684, and Watkins v. Holman's Lessee, 16 Pet. 25 (41 U. S. 25), 10 L. Ed. 873, and other cases.

The initial dam erected by defendant company was earthen in character and of sufficient height to dam the waters to a depth of several feet to provide a body of water from which a pump was operated. This dam was washed away, and in lieu thereof there was constructed a concrete dam through which there is a ten-inch pipe to afford passage for the water. This pipe is threaded so that a valve could be fitted thereon and the flow of water through it could be controlled. The pump used was of capacity to carry an amount equivalent to the entire flow of the stream if operated constantly. The entire normal flow did not exceed the needs of the company for water, but at the time of the trial there was being pumped therefrom an amount equivalent to two-thirds of the normal flow.

The evidence failed to disclose any damage already suffered by plaintiffs,

but the potentialities therefor are manifest, and no doubt it was the threat thereof if not controlled that prompted the court's decree.

The contention that the court should have enjoined the maintenance of the dam and the taking of water therefrom can be supported only by a literal definition of the statute and without regard to the judicial interpretation of its principles and the grounds upon which its principles may be invoked for relief.

The statute (60 O.S. 1941 § 60) is as follows:

"The owner of the land owns water standing thereon, or flowing over or under its surface, but not forming a definite stream. Water running in a definite stream, formed by nature over or under the surface, may be used by him as long as it remains there; but he may not prevent the natural flow of the stream, or of the natural spring from which it commences its definite course, nor pursue nor pollute the same."

Qualifications of the literal import of the language of the statute that are material here arise from the recognition of co-equal rights of other riparian owners on the same stream and the denial by the courts of relief to one by reason of the acts of others unless his own rights have suffered substantial impairment. Both of these qualifications are expressed in the first paragraph of the syllabus of Broady v. Furray, 163 Okla. 204, 21 P. 2d 770, as follows:

"Where plaintiff and defendant both own land adjacent to a definite watercourse, both of them are entitled to a reasonable use of the waters thereof, so long as such use does not cause substantial damage or detriment to the other."

In the later case of Martin v. British American Oil Producing Co. et al., 187 Okla. 193, 102 P. 2d 124, the same principle was reannounced as follows:

"The right of a riparian owner to the use of the waters of a stream is a qualified and not an absolute right of property. As between different riparian owners each one is limited to a reasonable use, with due regard to the rights and necessities of others interested. It is the right of all to have the stream substantially preserved in its natural size, flow, and purity, and protected against material diversion or pollution."

In the last-cited case the use of waters was by one who was not a riparian owner but who made use of the waters under a contract with the owner as is the case here. It was there contended that the one using was a trespasser and without right. The holding there is equally material here. There we said:

"The second proposition is that defendants had no ownership in the land abutting on the river, and therefore, had no riparian rights, and their use of the river channel made them naked trespassers.

"Thereunder plaintiff asserts that defendants were mere trespassers, and therefore had no right to the use of the stream, reasonable or otherwise.

"But, as stated above, there was evidence, not contradicted, tending to show permission by a riparian owner. This being so, they were not mere trespassers, and their liability would depend upon whether the use made was unreasonable and was the proximate cause of the injury to plaintiff's land."

In the situation here, as there, the defendant company was not without right, but it was a derivative right. Hence the standard for measuring the legality of the company's act is the extent of the right of the riparian owner who granted it. And the issue would involve whether the use was unreasonable and was the proximate cause of the injury.

The fact that such waters were being used apart from riparian lands, standing alone, would be no criterion of the reasonableness of the use however controlling it might be in cases where by reason of the insufficiency of water for both such use would conflict with that of another for strictly riparian purposes. It is a rule of general acceptance that

a riparian owner has the right to make any use of water, beneficial to himself, which his situation makes possible, so long as he does not inflict substantial or material injury on those below him who are to be deemed as having corresponding rights (67 C. J. 690, 691). The answer to the contention that the use in the instant case was unreasonable as a matter of law because for non-riparian purposes is clearly expressed in Lawrie et al. v. Silsby et al., 82 Vt. 505, 74 Atl. 94, as follows:

"The fact that such orators were taking the water to their nonriparian lands did not, per se, make their use unreasonable. But that fact, together with the size and character of the stream, the quantity of water appropriated, and all the circumstances and conditions, might make their use unreasonable. The stream might furnish water enough to supply this unreasonable use of the defendants and the reasonable demands of the orators, in which case the latter could not be heard to complain. The mere fact that the defendants reduce the natural flow of the stream would not be decisive. To entitle the orators to relief they must show that they suffer an injury to the use of the water which the law recognizes as belonging to them. Crawford Co. v. Hathaway, 67 Neb. 325, 93 N. W. 781, 60 L.R.A. 889, 108 Am. St. Rep. at p. 669. And here is where an important distinction is to be observed— the distinction between the use of a stream which infringes no right of another riparian owner, although it modifies the stream in some way, and a use which infringes his right, although it causes him only nominal damage."

It is further contended that the decree fails to give adequate relief and is prejudicial to the rights of plaintiff because it gauges the extent of plaintiffs' rights by conditions existing at the time of trial and ignores plaintiffs' "right to increase their livestock, install pumping facilities for irrigation and make any and all use out of the waters of Wolf Creek as may be a beneficial use on and to their premises."

If such interpretation of the court's decree were correct, the contention of prejudicial error would be well founded. That the trial court did not so intend is, we think, reflected in the following paragraph of the decree:

"The court further finds that the manner of regulating and determining the exact amount of water that each party has the right to use cannot be decided and determined in a proceeding of this character and the defendants are enjoined and restrained from using more water than the plaintiffs require for their domestic use and live-stock use and in all other particulars the prayer for an injunction is denied and both parties are allowed an exception."

If we deemed the decree subject to the construction contended for, we would modify it. But we think it is not properly susceptible to such construction. In the first place, the court makes no specific apportionment of the waters. Even if such were done, in this jurisdiction, where the common law definition of riparian rights substantially obtains (Chicago, R. I. & P. Ry. Co. v. Groves, supra), it should not follow that rights thereafter are fixed by the decree further than where facts incident thereto coincide with the facts at the time of such decree. In our opinion the correct rule of interpretation is expressed in Re Rights to Use of Waters of Silvies River, 115 Ore. 27, 237 P. 322, 357, as follows:

"The common law of riparian rights as to the use of water by riparian owners is not a doctrine of fixed rights. Therefore, a different proposition confronts the court when it comes to the construction of judgments and decrees in cases where they apportion the rights to use the water among the riparian owners on a stream, in those jurisdictions which adhere to the modified common-law rule of riparian rights (such as in the State of Oregon). Such judgments and decrees can usually be regarded as res judicata only so long as the conditions upon which they were rendered remain the same. See, also, William v. Altnow, 51 Ore. 276, (95 P. 200, 97 P. 539); 23 Cyc. 1161, 1290; Auto Acetylene Light Co. et al. v. Prest-

O-Lite Co., Inc., 264 Fed. 810; Silva v Reclam. Dist. No. 1001, 41 Cal. App. 326, 329, (182 P. 786)."

We are of the opinion that the effect of the decree is not to impair any riparian rights of plaintiffs which, independently of the decree, would have obtained by reason of change of conditions or pursuits upon plaintiffs' premises.

Finding no error therein, the judgment is affirmed.

HURST, V.C.J., and RILEY, BAYLESS, CORN, and DAVISON, JJ., concur.