Ingersoll *v.* Newton.

The Sparks Manufacturing Company, complainant and respondent,

*v.*

The Town of Newton, defendant and appellant.

Washington H. Ingersoll, complainant and respondent,

*v.*

The Town of Newton, defendant and appellant.

[Filed March 5th, 1900.]

1. When a riparian proprietor seeks the aid of a court of equity to restrain the diversion of water by a municipal corporation for public purposes, and offers to forego his right to an injunction on receiving just compensation, which he asks the court to determine, and the defendant in its answer consents to pay such compensation so to be determined by the court, in case the court considers the complainant entitled to an injunction, the court has jurisdiction to ascertain the amount of such compensation.

2. A municipality which buys a piece of land on a private stream several miles distant from its corporate limits, does not thereby become entitled as riparian owner to draw from the stream a supply of water for the inhabitants of the town.

3. The town of Newton has no authority to divert water from private streams, to the detriment of lower riparian owners, on condition that it will store storm water and give it out into the streams in dry times, and thus confer a compensatory benefit on those owners, they not consenting thereto.

4. In ascertaining just compensation for the diversion of water from a mill, the difference between the market value of the mill before the diversion and its market value afterwards, is usually a simpler and safer criterion than estimates of the probable cost of producing by steam at the mill the power which the diverted water would supply, and than estimates of the probable value of the water power at the mill, based on the rental value of power at other places more or less distant and dissimilar.

On appeal from a decree advised by Vice-Chancellor Pitney, whose opinion is reported in *12 Dick. Ch. Rep. 367.*

Ingersoll *v.* Newton.

*Mr. Thomas Kays,* for the defendant, appellant.

*Mr. William H. Corbin,* for the complainants, respondents.

The opinion of the court was delivered by

Dixon, J.

The circumstances of these cases are very fully stated in the preface and opinion of Vice-Chancellor Pitney, *12 Dick. Ch. Rep. 367.* With the conclusion there expressed touching the power and duty of the court, on the pleadings and evidence, to fix the compensation that the defendant ought to pay to the complainants, as a condition of withholding the injunctions to which they would otherwise be entitled, this court agrees—only with respect to the amounts awarded do we find reason for dissent.

The right to be obtained by the defendant under these decrees is the right to abstract from one of the tributaries of the Wallkill river a definite quantity of water, which in its natural course would flow past the complainants' mills. The opinion of the vice-chancellor deals with the right to divert eight hundred thousand gallons per day, and this quantity of water is shown by him to be capable of producing two and fifty-four hundredths continuous horse power at the Sparks Company's mill, and two and sixty-five hundredths continuous horse power at Ingersoll's mill. On this basis the learned vice-chancellor proceeds with two calculations—*first,* to ascertain the probable annual cost of producing the same power by steam at these mill sites, and *second,* to ascertain the probable annual value of the power at these localities, in view of the rental price of such power in other places more or less distant and dissimilar. Having thus formed an estimate of the annual value of the power, he compounds that value at four per cent. for forty years and finds the present value to be $3,302 at the Sparks mill, and $2,650 at the Ingersoll mill, and therefore awards those sums.

In this course of reasoning little, if any, attention was paid to the actual market value of the mill sites; and yet, in *Packard* v. *Bergen Neck Railroad Co., 25 Vr. 553,* this court declared

that, when only part of a person's property is taken, just compensation will be made by awarding the difference between the market value of the property before any part was taken and the market value of the property after the taking.

While it may be proper in such cases as the present to take into consideration the matters on which the vice-chancellor's awards rest, still we deem the difference between market values a simpler and safer criterion; and when it appears that by following other guides a result is reached utterly irreconcilable with this criterion, that result cannot be sustained. That such incompatibility exists in the cases before us will be made manifest by a few considerations now to be stated.

The testimony of witnesses living in the neighborhood of the Ingersoll mill is to the effect that the fair market value of the whole plant in 1896, when these bills of complaint were filed, was five or six thousand dollars. It has a total capacity to use one hundred and thirty-two horse power of water, which will be furnished by about one thousand one hundred million gallons of water per month. A tabulated statement of the natural flow of the river at Ingersoll's mill, known in the case as *Vermeule's Table D,* which appears to have been accepted as trustworthy by all parties at the trial, shows that during eight months of the average year there is more than a sufficient supply of water for the full capacity of the mill; that during June and September the supply is above five-sixths of the capacity, and that during July and August the supply exceeds five-ninths of the capacity. These *data* indicate an annual supply equivalent to one hundred and eighteen continuous horse power at this mill.

Now, if, for the abstraction of two and sixty-five hundredths continuous horse power the millowner ought to be paid $2,650, then for the abstraction of the whole power he ought to be paid $118,000. Such an inference proves the extravagance of the award.

In April, 1896, the plant of the Sparks Manufacturing Company was purchased by that company for $75,000. The plant included the water machinery with a total capacity of one hundred and seventy horse power, steam machinery having one hundred horse power, mill buildings and several acres of land.

To run the water plant to its full capacity the company required about one thousand three hundred and sixty million gallons of water per month, and besides it used about thirty million gallons per month for condensing steam, washing fabrics, &c.

*Vermeule's Table D* shows that during eight months of the average year there is more than a sufficient supply of water for the full capacity of this water power; that during June and September the supply is about two-thirds of the capacity, and that during July and August the supply is about four-ninths of the capacity. These *data* indicate an annual supply equivalent to one hundred and forty-one continuous horse power at this mill.

If for the abstraction of two and fifty-four hundredths continuous horse power of water the company ought to be paid $3,302, then for the abstraction of the whole power it ought to be paid $183,300. This inference proves the extravagance of the Sparks Company's award.

We think there is another error in the basis on which the present awards are made.

Assuming that the defendant withdraws eight hundred thousand gallons of water per day, *i. e.*, twenty-five million gallons per month, *Vermeule's Table D* shows that in an average year, after the allowance to the defendant is taken, more water will flow past these mills during eight months than either of the mills can utilize; so that only during four months will the supply available in the mills be perceptibly diminished. During those months the water diverted by the town would furnish three horse power at the mills, and three horse power for four months would be equivalent to one continuous horse power. Thus, even on the assumption that water power at these mills is as valuable as the learned vice-chancellor deemed it to be, allowances for two and fifty-four hundredths and two and sixty-five hundredths continuous horse power are about two and a half times too large.

In our judgment, an award of $500 to Mr. Ingersoll and of $750 to the Sparks Manufacturing Company will afford ample compensation to them for the abstraction by the defendant of eight hundred thousand gallons of water per day. Under the

election by the town to abstract twelve hundred and fifty thousand gallons per day, those sums must be proportionally increased.

Let the present decrees be reversed and decrees be rendered in accordance with the judgment above stated.

*For reversal*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, GARRISON, LIPPINCOTT, GUMMERE, LUDLOW, BOGERT, NIXON, HENDRICKSON, ADAMS, VREDENBURGH—12.

*For affirmance*—None.