STATE v. L. W. BROWN.

(Filed 17 March, 1926.)

**1. Private Nuisance—Abatement—Suit.**

At common law a party injured by a nuisance could bring an action on the case for damages or abate the nuisance in proper cases without suit.

**2. Entry Upon Land of Another.**

Entry upon the land of another and abatement of a private nuisance thereon by the injured party without suit may usually be regarded as a remedy which necessity alone indulges in cases of great emergency, in which the ordinary remedy would not be effectual.

**3. Nuisance on Wrongdoer's Land.**

As a general rule if the nuisance is on the wrongdoer's own land, he should first be warned and requested to abate it himself, but to this rule there may be exceptions, as when the nuisance is immediately dangerous to life and health.

**4. Public Peace.**

The public peace should not be jeopardized by permitting individuals to redress their own wrongs when they might obtain adequate security by resorting to courts of justice.

The defendant was convicted of malicious injury to real property in breach of C. S., 4301, before *Barnhill, J.*, at October Term, 1925, of DUPLIN, and upon errors assigned he appealed to the Supreme Court.

On 1 August, 1921, W. R. Pate, for value, leased the Bass mill pond on Folly Branch to H. B. Gaylor and his associates for a period of ten years. The lessees were given the exclusive right to go there at will and to take others with them for the purpose of hunting and fishing. Gaylor and his associates went into possession under the name of the Long Leaf Fishing Club, repaired the dam, put in gates, ponded the water, and stocked it with fish obtained from the Government in 1921. In January, 1925, the gate was raised and the water and the fish went down the stream. The gate was opened on four different occasions.

The defendant lived in Magnolia and owned a farm adjoining the land of W. R. Pate, on which he kept his hogs and cattle. In the fall of 1902 he cut a road from his farm to the Magnolia-Kenansville highway. As a part of the road he built a bridge across Folly Branch above the pond, the road never having been repaired except under his direction. He claims it as his road. He testified that in January, 1925, he tried to cross the bridge and was prevented by high water which had been backed on the bridge from the pond. He said his road thus became impassable and that he pulled up the gate and let the water run out of the pond so that he could repair the bridge. He had to go thirty or forty feet off his land to get to the gate. The defendant testified that he had complained to members of the club and had told them of his predicament. One of the defendant's witnesses testified: "The water was not across the bridge. The bridge was so you couldn't cross before the fish pond was established."

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*Stevens, Beasley & Stevens for defendant.*

ADAMS, J. At common law the party injured by a nuisance had a choice of two remedies. (1) He could bring an action on the case for damages, and, if a tenant of the freehold, he could resort to the assize of nuisance or to the writ of *quod permittat prosternere,* which not only gave the plaintiff satisfaction for his injury, but removed the cause by abating the nuisance. These writs, long out of use, have been super-seded for practical purposes, in the absence of special statutory provision, by an action for damages and abatement and by a suit in equity to restrain the continuance of the wrong. (2) The other remedy at common law was an abatement of the nuisance without suit by the act and authority of the party aggrieved. 3 Bl. Com., 5, 220; 2 Pol. & Mait., 53; 7 Hold. His. Eng. Law, 330.

The defendant in the present action contends that he has a right of way extending from his farm through Pate's land to the Magnolia-Kenansville highway; that several years ago, as an essential part of his easement, he built a bridge across Folly Branch; and that the lessees tortiously obstructed the stream and flooded his bridge, thereby creating a private nuisance which he had a right to abate without suit. It is understood, of course, that we are not dealing with a public nuisance, and in the principle applicable to an abatement in such cases we are not now interested. *S. v. Dibble,* 49 N. C., 108; *S. v. Parrott,* 71 N. C., 311. The defense is based on the defendant's alleged right to enter upon the premises of the lessees and release the ponded water. All the exceptions relate to this proposition, and if the proposition is not sound or is not sustained by the evidence the defense must fail.

The theory upon which the common law gave a remedy by abatement of a private nuisance had its foundation in the right to redress a private wrong,—particularly the obstruction or annoyance of such things as required an immediate remedy and could not await the "slow progress of the ordinary forms of justice." 3 Bl., 6. It is no doubt upon this theory that some of the authorities say that if the acts of the occupant are in themselves unlawful and the nuisance is immediately dangerous to life or health, the person injured may enter on the land of such occupant and abate the wrong; but *Jaggard and Pollock* suggest that it is a "hazardous course at best, for a man to take the law into his own hands, and in modern times it can seldom, if ever, be advisable." 2 Jaggard on Torts, 901; Pollock on Torts (12 ed.), 426. Entry upon the land of another and abatement of a private nuisance thereon by the injured party without suit may usually be regarded as a remedy which necessity alone indulges in cases of great emergency, in which the ordinary remedy would not be effectual. *Gates v. Blincoe,* 26 Am. Dec., 440. Accordingly, this Court has said, "We do not undertake to lay down any general rule as to how far the individual may go in the abatement of the nuisance which is an injury to him." *Wolfe v. Pearson,* 114 N. C., 622, 635. Also, it may be said as a general rule that if the nuisance is on the wrongdoer's own land he should be first warned and required to abate it himself,—a rule to which there may be exceptions, as for example when the nuisance is immediately dangerous to life or health or when some special emergency demands immediate action. 2 Jaggard, 800. But the defendant has not shown the necessary emergency. True, he testified that the water was over the bridge and that he opened the gate and let the water run out of the pond in order to repair the bridge; but he introduced other testimony which was in direct conflict with his own. Nor has he shown the necessary notice. He complained to the members of the club and told them his predica-

ment; but there is no evidence that he notified them that he would abate the nuisance if they did not. Indeed, the evidence is not entirely free from an intimation of secrecy on his part. Under the circumstances he should have sought relief in the courts. "The public peace should not be jeopardized by permitting individuals to redress their own wrongs when they might obtain adequate security and indemnity by resort to any of the ordinary remedies in courts of justice." *Gates v. Blincoe, supra.*

What we have said disposes of all the assignments of error. As to the first we have assumed that the defendant had acquired the right of way; in the second there is no reference to the necessity of a warning and notice of entry; and in the instructions excepted to we find no error. The defendant was tried upon an indictment, but the fine imposed did not exceed the punishment prescribed by the statute in case of the complainant's failure to state in his affidavit that the damage inflicted was more than ten dollars. C. S., 4301.

No error.