## R. H. PERNELL v. CITY OF HENDERSON.

(Filed 24 September, 1941.)

**1. Municipal Corporations § 18: Waters and Watercourses § 3—**

A municipal corporation, impounding waters of a private stream and diverting same into its municipal water system does not do so in the character of riparian owner, since the individual citizens of the municipality do not have such riparian rights and therefore the municipality as a political unit does not have them, and the municipality may not defend an action by a lower riparian owner for the diversion and diminishing of the flow of the stream on the ground that it has the right to divert the waters for domestic purposes, even to the extent of taking the entire flow.

**2. Same—**

In an action by a lower riparian owner against a municipal corporation for diversion of the waters of a stream into its municipal water system, the failure of the complaint to allege the quantity or percentage of the water diverted and the quantity remaining in the stream is not a fatal defect.

**3. Municipal Corporations § 16—**

A lower riparian owner may maintain an action against a municipality to recover damages resulting from the pollution of the stream by the municipality, notwithstanding that the nuisance had been discontinued prior to the action, the remedies of the lower riparian owner not being restricted to a suit for the abatement of the nuisance or an action for damages for the taking of a permanent easement.

APPEAL by defendant from *Harris, J.,* at March Term, 1941, of VANCE.

*Gholson & Gholson and W. H. Yarborough for plaintiff, appellee.*
*A. A. Bunn, Jasper B. Hicks, and J. H. Bridgers for defendant, appellant.*

SEAWELL, J. The plaintiff has for some time owned and operated a grist mill on a stream known as Sandy Creek, near Henderson, a city of some 7,600 inhabitants. The city has constructed and maintains dams and reservoirs on the tributaries of this stream above the mill site, from which it pumps a supply of water through mains to the city and distributes it to the inhabitants and users through a water system in the usual way. The plaintiff claims that this diversion of the water from the natural flow of the stream has so diminished it that the value of his mill site has been destroyed or greatly reduced, and his operation of the mill rendered unprofitable. He further alleges that his injury is constantly increased by the rapid growth of the city and its increasing needs. He alleges that the defendant has expressed its intention of continuing the diversion and that it will continue to his injury and damage.

For a second cause of action, plaintiff complains that for some years prior to 1 January, 1940, while he was owner and in occupation of the premises, the defendant created and continuously maintained a nuisance by emptying raw sewage into an upper tributary of the stream on which his mill was located, which sewage flowed down with the stream and entered his pond, silting and filling it up so as to greatly reduce its capacity, and causing foul odors about the mill and premises, which could be endured only for a short time, and which caused his customers to complain; and that his premises thereby became unhealthy and were otherwise damaged by the noxious qualities of the sewage, in which respects he alleges that he is endamaged in a substantial amount.

To the first cause of action the defendant demurred upon the ground that it appears from the complaint that the defendant is a municipality, distributing to its inhabitants for domestic purposes, the water it diverts, which it has the right to do as a riparian owner, without accountability

to plaintiff, so long as its use for such purpose is reasonable, even though it takes the entire flow. Defendant further points out that such use is preferred by law to that of manufacturing, which it conceives to be the business of plaintiff. It demurred also because the cause of action is insufficiently stated with respect to the quantity of water taken and that left.

It has been held with practical unanimity that a municipal corporation, in its construction and operation of a water supply system, by which it impounds the water of a private stream and distributes such water to its inhabitants, receiving compensation therefor, is not in the exercise of the traditional right of a riparian owner to make a reasonable domestic use of the water without accountability to other riparian owners who may be injured by its diversion or diminution. "The use of the waters of a stream to supply the inhabitants of a municipality with water for domestic purposes is not a riparian right." 67 C. J., 1120. "The weight of authority . . . holds a municipal corporation civilly liable for diverting the waters of a private watercourse for the purposes of a public water supply, either with or without legislative authority." 19 R. C. L., 1096. "A municipal corporation will be liable for diverting the waters of a stream or watercourse and depriving lower riparian owners of the use thereof." McQuillin, Municipal Corporations, Vol. 6, pp. 1251, 1252.

The precise question raised by defendant is dealt with by a leading authority as follows: "The rule giving an individual the right to consume water for his domestic needs is founded upon the needs of the single individual and the possible effect which his use will have on the rights of others, and cannot be expanded so as to render a collection of persons numbering thousands, and perhaps hundreds of thousands, organized into a political unit, a riparian owner, and give this unit the right of the natural unit. The rule, therefore, is firmly established that a municipal corporation cannot, as riparian owner, claim the right to supply the needs of its inhabitants from the stream." Farnham, Water and Water Rights, Vol. 1, p. 611.

The same view finds expression in almost innumerable opinions in the several state jurisdictions, among which the following may be regarded as typical: *Fisher v. Clifton Springs,* 121 N. Y. S., 163; *Smith v. Brooklyn,* 160 N. Y., 357, 54 N. E., 787; *Sparks Mfg. Co. v. Newton,* 60 N. J. Eq., 399, 45 Atl., 596; *Wallace v. City of Winfield,* 96 Kan., 35, 149 Pac., 693. This Court is in accord with the rule. *Smith v. Morganton,* 187 N. C., 801, 123 S. E., 88. The case of *Canton v. Shock,* 66 Ohio St., 19, 63 N. E., 600, seems to stand practically alone in its suggestion to the contrary, and we find it wanting in valid argument to support the conclusion reached.

Conceding that those who own the banks of a stream may, for their own convenience, contrive and use facilities and devices for distribution of water amongst themselves for such purposes, withdrawing from the flow needful quantities, that situation is not presented by the typical construction and use of a water supply system by a municipality, as in the case at bar, which impounds the water in suitable reservoirs, pipes it in large quantities into the city, and distributes and sells it to consumers for any purpose whatever for which it may be used. It could hardly be contended that these users are riparian owners, or that they could invest the city, as representative, or in the role of *parens patriœ*, with rights in that respect which they themselves did not have.

The exigencies involved in supplying its inhabitants with water does not confer on the city an exonerating preference over the lower riparian owner who desires to use the water for purposes of manufacturing. "The right to have a natural watercourse continue its physical existence upon one's property is as much property as is the right to have the hills and forests remain in place, and while there is no property right in any particular particle of water or in all of them put together, a riparian proprietor has the right of their flow past his lands for ordinary domestic, manufacturing, and other lawful purposes, without injurious or prejudicial interference by an upper proprietor." *Adams, J.,* for the Court, in *Smith v. Morganton, supra.*

The first cause of action is sufficiently stated. McIntosh, North Carolina Practice and Procedure, p. 351.

The objection to the second cause of action is also untenable. The plaintiff may set up as actionable the injury which he has sustained because of the continuing maintenance of the nuisance during his ownership and occupancy of the premises, resulting in provable damages, notwithstanding that the nuisance has been discontinued. His remedy was never restricted to an abatement of the nuisance: *S. v. Brown,* 191 N. C., 419, 132 S. E., 5; and the question of permanent easement is no longer in the case. *Anderson v. Waynesville,* 203 N. C., 37, 164 S. E., 583.

The judgment overruling the demurrer is

Affirmed.