CHARLES M. BROWN et al., Appellees, v. JOSEPH SCHNEIDER, Appellant.

No. 16,246.

### SYLLABUS BY THE COURT.

WATERCOURSES—Source of Supply—Continuity of the Flow of Water. It is not essential to the existence of a natural watercourse that the source of supply should be living water. It may be surface water collected on a large watershed from rains and melted snows which concentrates and cuts for itself a well-defined channel and regularly discharges through such outlet. Nor is it essential that there should be a constant and continuous flow of water. The supply is sufficiently permanent where, as in this case, the water is concentrated and flows with some regularity during the heavy rains which ordinarily occur in the region.

Appeal from Saline district court; ROLLIN R. REES, judge. Opinion filed January 8, 1910. Affirmed.

*David Ritchie,* for the appellant.
*Z. C. Millikin,* for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to enjoin the maintenance of a dam which was erected by Joseph Schneider across a ravine or what was alleged to be a natural watercourse, and which, it is alleged, resulted in damage to the lands of the appellees. The appellant, Schneider, owned the northwest quarter of section 24, while appellees owned the southwest quarter of the same section and all of the adjoining section 23. The ravine which was obstructed originated in the hills several miles south of the appellant's land, and consisted of two branches, which united not far from appellant's dam. The total length of this watercourse is estimated to be about twelve miles. It served as the natural drainage for rains and melting snows from quite a scope of country, and originated in the hills of an adjoining township. In places the ravine was cut out by the water from six to seven feet deep, and conveyed "immense quantities of water, which rushes down from the hills in great force, and continues to flow for several days" after heavy rains. There was a spring, too, in the ravine, which flowed continuously for some distance. The dam was erected over the objections of appellees, causing an overflow of their lands, and to enjoin the continuance of the nuisance they brought this action. The trial court found in favor of the plaintiffs, granting them an injunction against the maintenance of the dam and ordering its removal. From this judgment an appeal is taken by Schneider.

The main contention is that the findings do not show that permanence in the source of the supply of water from springs or the accumulations from the surface which is essential to a natural watercourse. There was, as we have seen, a large watershed drained by the stream, and it appears that the force of the water col-

lected from this territory had cut a channel with well-defined banks, which were fringed part of the way by willows and other trees. In places the banks of the stream were about seven feet high, and along it were deep places and pools in which fish were caught. During heavy rains, such as ordinarily occur in that region, an immense quantity of water is concentrated and carried down the stream. It is true, as contended, that there is not sufficient living water to make a continuous flow along the course of the stream. There must be a permanent source of supply, but it is not essential to a watercourse that the flow should be constant and continuous. Surface water may be the source of supply, and the flow from that source is necessarily intermittent and somewhat irregular. It is sufficiently permanent if the accumulated surface water flows through a · well-defined channel, made by the water flowing with some regularity during the heavy rains which ordinarily occur in that region. (*Palmer v. Waddell,* 22 Kan. 352; *Railway Co. v. Scott,* 71 Kan. 874.) To constitute a watercourse it is not necessary that the supply should be from springs, nor that the water should be discharged through a channel into another watercourse. The fact that the channel of the stream in question grew less distinct and that it practically passed out of sight before the waters reached Dry Creek does not argue that the stream lacks the characteristics of a watercourse. In *Rait v. Furrow,* 74 Kan. 101, it was said:

"Subterranean currents of water emerge from the ground and flow through surface channels, and, again, running streams sometimes sink away and are no longer traceable on the surface. The outlet of a stream may be unknown, but if its course on the surface—so far as it runs—is well defined, and has the element of permanence, it must be regarded as a watercourse, and its surface flow at least can not be interrupted nor diverted from its natural channel." (Page 109.)

Here the stream was quite a number of miles in

length.  It drained a large territory, and the surface water arising from the heavy rains and melting snows on this watershed was concentrated and cut for itself a well-defined channel, through which it has flowed indefinitely.  It appears that the dam⸱ erected by appellant caused the waters to back up and make a pond covering forty acres of the land of one of the appellees, and fifteen acres of that of another, and that at the time of the trial, after a month of dry weather, fifteen acres of the land were still under water.  The conclusion of the court that the stream at the point at which the dam was erected was a natural watercourse and that the dam constituted a nuisance which caused damages of a continuing nature was well supported by the facts in the case.

The judgment is affirmed.