BRANCH et al. v. CITY OF ALTUS et al.

No. 31760. June 12, 1945.

Rehearing Denied July 3, 1945.

*159 P. 2d 1021.*

Robinson & Oden, of Altus, for plaintiffs in error.

L. A. Pelley, City Atty., of Altus, for defendants in error.

HURST, V.C.J. The question presented is whether a canal constructed by the city of Altus for the purpose of draining surface water into the city

reservoir had become a waterway, and whether the city should be restrained from damming up the canal, and thus turning the water back to its former course.

In 1910 the city purchased a strip of land 33 feet wide and 2½ miles long extending north and south. On this strip the city constructed a canal, approximately seven feet deep in places and about 15 feet wide. The city also constructed a ditch and an embankment for a distance of about three-eighths of a mile east from the north end of said canal to drain the surface water into the canal which conducted the water south and into the city reservoir. This canal was maintained and used by the city until about the year 1930, when the city obtained a new water supply and abandoned the canal. The canal then began to fill up with mud and debris and to overflow onto the land of the defendants, J. G. and J. W. Reid, lying west of the canal, during heavy rain. To correct this condition, the city in 1939 constructed a dam across the north end of the canal for the purpose of diverting the water back through the ditch flowing east and allowing the water to flow east about three-eighths of a mile and then flow south in its natural course which it formerly took before the construction of the canal. The new dam which the city constructed across the north end of the canal was washed out by heavy rains. A second dam was put in which also washed out. These new dams, before they washed out, had caused the water to flow as it formerly flowed back east and then south and across the 80 acres of land belonging to the plaintiffs, injuring the plaintiffs' land. The plaintiffs thereupon brought this action to restrain the city from rebuilding said dam.

The evidence discloses that if the dam is not constructed the gradual filling up of the canal from natural causes will cause the waters from the canal to overflow onto the land of the defendants, J. G. and J. W. Reid, lying on the west side of the canal, thus creating a liability on the part of the city for allowing said surface water to flow over land where it had never before flowed. The evidence also discloses that, prior to the construction of the canal, the water carried by the canal had flowed east of the canal and over the land now belonging to the plaintiffs.

It was the contention of the plaintiffs that the continued existence of said canal over the long period of years made it a watercourse, and that the city had no right to change it. They argue that the city is attempting and threatening to maintain an obstruction in a watercourse by building a dam across it. If the canal had become a watercourse, as defined by the law, then the plaintiffs' position would be well taken. This is the proposition upon which the plaintiffs' cause of action is predicated.

It is necessary, therefore, to determine whether this canal constituted a watercourse as defined by the law. It is not a natural watercourse in the sense that it has been constructed by nature. In Chicago, R. I. & P. Ry. Co. v. Groves, 20 Okla. 101, 93 P. 755, 22 L.R.A. (N. S.) 802, it was stated that an artificial canal may become a watercourse, "Where the water has been accustomed to gather and flow along a well-defined channel where, by frequent running, it has worn or cut into the soil," and that a watercourse is developed "when such water is regularly discharged through a well-defined channel which the force of the water has made for itself and which is the accustomed channel through which it flows and has ever flowed." The above language is also quoted with approval in Garrett v. Haworth, 183 Okla. 569, 83 P. 2d 822. See, also, Chowchilla Farms, Inc., v. Martin, 219 Cal. 1, 25 P. 2d 435.

The evidence clearly shows that the water coming through this canal never did cut into the soil and establish itself as a watercourse by its own force, as above defined. On the contrary, the evidence shows that while the canal was in use, the city was compelled to maintain it by keeping it clear of mud and

debris. In reality, the origin of the present action is in the fact that when the city ceased maintaining the canal, it began to fill up and cause trouble by overflowing, and the city then attempted to restore the water back to its former and natural course.

The trial court made findings of fact, in part as follows:

"It is the opinion of the court that the canal constructed by the defendant city was not a substitute for a watercourse and ever remained an artificial watercourse. The evidence showed that the water that flowed in the canal was never sufficient in volume or speed of flow to cut or enlarge the original channel but owing to the fact that the land to the south over which the canal run was higher ground the bed of the canal was continuously becoming clogged with growth of grass, weeds, and other debris, causing continuous work and expense on the part of the city of Altus to keep the channel open; evidence showed that it would cost the city approximately $3,000 at the time of the trial to clean out the channel sufficiently to enable the water to flow through it and not overflow on the adjoining land in time of excessive rainfall. . . . all the facts in connection with its construction indicated conclusively that it was only temporary in its nature. . . . The evidence shows that the canal cannot be abandoned by the city, in its original state, without making the city subject to claims for damages from adjacent landowners whose land would be overflowed from the canal, should it not be continually maintained, and the burden would be upon the city to maintain it. The fact that this condition exists, it would seem to be a sufficient argument that this canal never became a natural watercourse, in which adjacent landowners acquired prescriptive rights to have it indefinitely maintained by some one who received no benefits whatever from its continued maintenance."

These findings are not clearly against the weight of the evidence, and the same will not be disturbed here on appeal.

It is further contended by the plaintiffs that this canal has become a watercourse by prescription. But this position cannot be maintained because there was no adverse possession or invasion on the part of the plaintiffs against the defendant. A similar question arose in Lake Drummond Canal & Water Co. v. Burnham, 147 N. C. 41, 60 S. E. 650, where the canal had been in use for 40 years. The court said:

"The lower tenant acquires no right to a continuance of the structure resting merely on prescription, for an easement by prescription can only be established by adverse possession or continuous invasion of another's right."

In Farnham on Waters and Water Rights, vol. 3, pp. 2402-3, the rule is stated thus:

"An easement exists for the benefit of the dominant estate alone, and the servient owner acquires no right to insist on its continuance, or to ask for damages on its abandonment."

See, also, 67 C. J. 875, notes 24 and 25; Drainage Dist. v. City of Everett, 171 Wash. 471, 18 P. 2d 53.

Judgment affirmed.

GIBSON, C.J., and RILEY, OSBORN, BAYLESS, WELCH, CORN, and DAVISON, JJ., concur.