RICHARD LEE, APPELLANT, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, A CORPORATION, APPELLEE.

39 N. W. 2d '574

Filed November 18, 1949. No. 32682.

*Edward E. Carr,* for appellant.

*F. J. Schroeder, J. W. Weingarten,* and *W. P. Loomis,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Richard Lee brought this action in the district court for Frontier County against the Chicago, Burlington & Quincy Railroad Company. The purpose of the action is to enjoin the defendant from changing the flow of water

in a drainage area where such drainage area is crossed by defendant's right-of-way. From a decree dismissing his petition and enjoining him from interfering in any way with the drainage of the water on or across defendant's right-of-way, the plaintiff has perfected this appeal.

The lands herein involved are a part of Section 5, Township 8 North, Range 29 West, of the 6th P. M., in Frontier County, Nebraska. Since 1936 these lands have been occupied by the appellant. In 1887 appellee built its track on a 100-foot right-of-way it had acquired across Section 5. This right-of-way crosses Section 5 in a southeasterly to northwesterly direction. After these lands were separated by this right-of-way a private roadway or crossing was provided across the track for the convenience of the occupants thereof. This was done in order that they might travel from one side of the track to the other. This private drive or roadway is located at a point where the right-of-way crosses a draw extending from a drainage area located to the southwest thereof. The area drained covers about 10 acres. The draw does not have a regular flow of water but only flows after a rain or from melting snows. As the water from this drainage area approaches the right-of-way from the southwest it is divided by higher ground and, as a result, flows to the right-of-way in separate draws. After the two draws reach the right-of-way, the higher ground in the center begins to disappear and, at a point just northeast of the rails, does so completely. At this point, before the right-of-way was constructed, the water from these two draws naturally converged and then flowed northeast onto appellant's land and into Medicine Creek, as the natural drainage of this whole area is to the northeast. Medicine Creek is a small stream that flows from the northwest to the southeast and, in Section 5, lies generally to the northeast of appellee's right-of-way.

For many years after it had constructed its right-of-way the only drainage appellee provided for the purpose

of carrying off the water coming down these two draws was a 24-inch tube located under the right-of-way just northwest of the private drive, which drive is located on the higher ground that separates the draws as they approach the track. It also appears that up until 1935 a culvert was maintained southwest of the track under the private drive. However, this culvert under the private drive was abandoned about 1935 and thereafter allowed to fill up so that the water coming down the southeast draw, which is southeast of the private drive, was carried into a cut ditch along the track and then emptied into an opening under the track in another draw some 600 to 700 feet to the southeast. The track to the southeast of this draw passes through a cut and in this cut are cut ditches along both sides of the track. These cut ditches are located at the edge of the roadway at the foot of the ballast. They were placed there for the purpose of carrying off all water falling on the track in order to keep the right-of-way and ballast dry. This is the ditch through which, after the culvert under the private drive was abandoned, the appellee flowed the water coming down the southeast draw.

In 1946 and 1947, because of excessive flood waters which the tube under the track was unable to carry, the track on both sides of the private drive became flooded. As a result thereof the appellee, in the fall of 1948, placed an additional 24-inch tube under the track near the other tube which is located just northwest of the private drive. It also placed a tube under the private drive at a point about 12 feet southwest of the track. This latter tube is intended to carry to the northwest the water coming down the southeast draw and cause it to flow under the track by means of the two tubes already referred to.

It is this construction, particularly the tube under the private drive, that appellant seeks to enjoin, and with which the trial court enjoined the appellant from interfering.

When appellee constructed its right-of-way the natural

flow of the water in both draws was from the southwest to the northeast and eventually into Medicine Creek. We said in this regard: "It is the duty of those who build structures across natural drainways to provide for the natural passage through such obstructions of all waters which may be reasonably anticipated to drain there, and this is a continuing duty." Crummel v. Nemaha County, 118 Neb. 355, 224 N. W. 864. See, also, Leaders v. Sarpy County, 134 Neb. 817, 279 N. W. 809. This duty gives the party obligated thereby the right to do so.

It appears that before appellee's roadbed was built the water coming down the separate draws would converge before it reached the lands of the appellant that lie immediately northeast of appellee's right-of-way. However, appellee, by constructing a culvert under the private drive and carrying the water coming down the southeast draw to the northwest on the southwest side of the track, will divert this water on its right-of-way by joining it with the water coming down the northwest draw before instead of after it passes the track. It will then flow under the track and to the northeast onto the lands occupied by appellant. If the water had been permitted to flow naturally all of it would have joined in one body while on the lands now within the right-of-way and then flowed as one body onto the lands occupied by appellant northeast thereof. We do not see that it can be material to the appellant how the water that reaches his lands is handled by the appellee while flowing on its right-of-way as long as it is returned to a point of natural flow before it reaches his lands and enters thereon, provided it does so in the same manner as if its flow had in no way been interfered with. See Conn v. Chicago, B. & Q. R. R. Co., 88 Neb. 732, 130 N. W. 563, and Keifer v. Stanley, 111 Neb. 822, 198 N. W. 144.

Since the appellee not only had the duty but the right to provide for the passage of this water through its right-of-way the only question remaining is, are the facts and circumstances such that the appellant obtained a pre-

scriptive right to require appellee to continue to flow the water coming down the southeast draw into its cut ditch and then along its track to a point some 600 to 700 feet to the southeast and from there into an opening under its right-of-way? In this respect the facts show that since 1935, and up until the change was made in the fall of 1948 when the two tubes previously referred to were installed, the appellee has caused the water in the southeast draw to flow to the southeast along its track in its cut ditch located on the southwest side thereof and then to empty into another draw at a point in another drain area which has already been referred to.

The question involved under this situation is not new in this state and has been decided adversely to the appellant's contention in Mitchell Drainage District v. Farmers Irrigation District, 127 Neb. 484, 256 N. W. 15. Therein we said: "Upper riparian owner constructing and maintaining artificial structure affecting flow of waters for temporary purpose advantageous to it is not obligated by lapse of time to maintain structure and conditions produced thereby though incidentally benefiting lower owners." We therein quoted with approval from 3 Farnham, Waters and Water Rights, pp. 2402, 2403, as follows: "The fact that the exercise of the easement is of advantage to the owner of the servient estate will give him no right to insist on the exercise of the easement on the part of the dominant owner. An easement exists for the benefit of the dominant estate alone, and the servient owner acquires no right to insist on its continuance, or to ask for damages on its abandonment." Therein we went on to say: "While the weight of recent authority supports the proposition that no reciprocal right accrues to the servient estate simply from adverse user for the prescriptive period, rights may acrue to the servient estate from estoppel, dedication or acquiescence." None of these are here evidenced. For like or similar holdings, see Hinkle v. Chicago, R. I. & P. Ry. Co., 208 Iowa 1366, 227 N. W. 419; Branch v. City of Altus,

195 Okl. 625, 159 P. 2d 1021; and Drainage District No. 2 v. City of Everett, 171 Wash. 471, 18 P. 2d 53, 88 A. L. R. 123.

Our conclusion is, under the facts and circumstances as evidenced by the record, that no right accrued to appellant by reason of the fact that appellee caused the waters coming down the southeast draw to flow southeast in its cut ditch along the track even though such diversion was allowed to continue for a period of more than ten years.

In view of our holding herein we find the decree entered by the trial court to be correct and the same is affirmed.

AFFIRMED.