CULBERTSON et ux. v. GREENE.

No. 34798.    Feb. 26, 1952.

Rehearing Denied March 25, 1952.

*243 P. 2d 648.*

Bryan Billings, Woodward, for plaintiff in error.

Sparks & Boatman, Woodward, for defendant in error.

HALLEY, V. C. J. The parties will be referred to as they appeared in the lower court. The petition in this case first sought injunctive relief and damages. During the trial, plaintiff dismissed the action in damages. At the conclusion of the trial the court rendered judgment directing the removal of the dam erected by defendants and permanently enjoining them from erecting any dam or obstruction on the premises.

The evidence discloses without substantial conflict that plaintiff owns the N½ SW¼ and the W½ SE¼ and the SE¼ NW¼ of sec. 25, twp. 21 north, range 20 W.I.M. in Woodward county, State of Oklahoma, and that defendants own the S½ SW¼ of the same section; that in the year 1946, defendants built a dam about 25 yards south of the common north fence of their property, running to the northeast corner thereof and beginning approximately 160 yards west of said corner. The dam was closed at the west end and open at the east end so that it turned the water which came from plaintiff's land on the north, causing it to flow east across the land on the W½ SE¼. The top of the dam was between three and four feet from the ground level.

The testimony thereafter is in conflict. Plaintiff introduced two aerial maps, and defendants introduced a plat or drawing. These exhibits exemplified the two theories of the parties and the testimony of plaintiff tended to support their separate theories. The first exhibit purported to disclose water running or distributed without a definite course or channel, but the exhibit of defendants showed a defined channel. The testimony of plaintiff tended to disclose that prior to the construction of the dam the water was surface water and flowed naturally across the land of defendants in a somewhat southeasterly direction, remaining predominantly on the land of defendants, although during heavy rains some water ran easterly across a portion of plaintiff's land; that after the construction of the dam the water was diverted so that it flowed east over the land of plaintiff, being discharged at one place at the northeast corner of defendants' land, which discharge dug four ditches in the fields of plaintiff, injuring the land and damaging the crops thereon.

The testimony of defendants tended to show that there was a definite channel running by the northeast corner of the land of defendants, which the water followed for a number of years; that a fence caused this channel to change so that it was running over the land of defendants approximately 160 yards west of the northeast corner of their land, and that defendants constructed the dam approximately 160 yards in length and three feet high for the purpose of returning the water to the original channel.

The court submitted certain interrogatories to a jury called in the case prior to the time plaintiff dismissed the action in damages. We shall not set out in detail those interrogatories nor the answers thereto. They are merely advisory, and the evidence will be reviewed and weighed by this court. The weight of the evidence establishes that at one time practically all of the water entered plaintiff's land to the east of defendants near the northeast corner of defendants' land; that over a number of years, due to surface changes, the water began to flow over the lands of defendants, who then constructed a dam to divert it; that the dam actually did return the water to the land over which it had flowed before it began to change its direction. The question, however, is: Did the defendants have the right to build the dam and thus divert the water?

In Rainey v. Cleveland, 203 Okla. 283, 220 P. 2d 261, it is stated:

"Landowner has no right to construct by dike, dam, ditch, or otherwise, anything on his own land which in time of ordinary flood or heavy local rain will collect surface waters which flow on and across his land, and throw the same in a large and unusual volume on the lands of another so as to injure them, and when water is thus diverted the other landowner has the right to repel it."

Defendants rely upon Garrett v. Haworth, 183 Okla. 569, 83 P. 2d 822. Therein it is stated:

"Every proprietor upon a watercourse has the right to insist that the water shall continue to run as it has been accustomed, and no one can obstruct its course so as to damage another without being liable for damages."

Defendants apparently rely upon certain language in the Garrett case, supra, to the effect that the plaintiff in that case had a right to clean out a regular channel of a stream conditioned upon the return of the water from his premises to the premises of defendant, and argue that the court erred in the case under consideration in finding that the waters were surface waters. Although we find that the trial court adopted the findings of the jury in its answers to the interrogatories submitted to it, we fail to find that the trial court determined that the waters involved are surface waters. If the defendants were arguing that the court erred in not finding that the waters were surface waters and that defendants could divert them at will, which was the ancient common-law rule, then we of necessity would have to discuss the modified rule as to surface waters declared in Chicago, R. I. & P. R. Co. v. Groves, 20 Okla. 101, 93 P. 755, and since followed in this state. But such is not the case. Defendants cite Garrett v. Haworth, supra, to support their right to divert a channel and return the water thereby diverted. There is no evidence in the case at bar of a stream and the diversion thereof for use by a riparian owner. The defendants did not clean out any chanenl, divert the water to their own use, and return the water to a common channel. Neither did they clean out a channel of any stream for the purpose of keeping water in the channel of that stream. Assuming without deciding that there was a stream or channel for the water, the evidence clearly shows that the only water for such channel came from rains and remained in such watercourse only during the rain and for a short period thereafter. The defendants took the water caused by the rains and changed its course from a natural flow 160 yards west of their northeast corner, and ran it so that it would not flow as it had been flowing but would be thrown entirely onto the lands of plaintiff. It is therefore immaterial whether the waters were surface waters or waters in a watercourse. In Davis v. Fry, 14 Okla. 340, 78 P. 180, 69 L. R. A. 460, the court announced the rule that once surface water has lost its character it cannot thereafter be drained to the damage of another. In Town of Jefferson v. Hicks, 23 Okla. 684, 102 P. 79, it is said:

" . . .But it is well settled that one proprietor cannot for his benefit change or obstruct the ordinary course of water in a water course or stream to the injury of other proprietors. . . . "

Under such circumstances, the evidence reflects that plaintiff was entitled to an injunction. In Gaines v: Union Central Life Ins. Co., 191 Okla. 246, 129 P. 2d 79, this court said:

"In a case of equitable cognizance the judgment of the trial court will not be disturbed on appeal unless the same is clearly against the weight of the evidence."

The evidence clearly establishes the right to injunctive relief.

Judgment affirmed.

WELCH, CORN, GIBSON, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.