HARRELL *v.* CITY OF CONWAY.

5-452                                                 271 S. W. 2d 924

Opinion delivered October 25, 1954.

*Bailey & Warren,* for appellant.

*Henry & Henry, Clark & Clark* and *Geo. F. Hartje,* for appellee.

*Joe C. Barrett, amicus curiae.*

J. SEABORN HOLT, J. This appeal involves the rights of the City of Conway and the Conway Corporation (appellees) and the rights of the other riparian owners (appellants) within the watershed of Cadron Creek.

Material facts appear to be undisputed. The City of Conway owns its Municipal Water System and appellee, Conway Corporation, operates it under lease from the City. Since about 1912, the City has been getting its water supply from Cadron Creek, a non-navigable stream, about five miles away. Cadron Creek empties into the Arkansas River, and the City's point of intake and its water facilities and equipment are about two miles upstream from the river. In 1930, the City constructed small earthen dams of various types just below its point of intake to hold the flow of Cadron Creek. Conway had previously acquired, at or near this point of intake, 20 acres of land bordering on both sides of Cadron Creek. In June, 1952, the City completed, at a cost of some $50,000, a permanent concrete dam below this point of intake, which has been put in use by the City. When the waters of Cadron Creek reach the top of this dam, approximately 8 ft. high, they are held within the natural banks of the Creek and a pool of water is formed for about 10 miles upstream.

Appellants own farms of various sizes bordering on Cadron Creek upstream from Conway's dam—on its 20-acre tract and its point of intake—and during the drought of 1953 began taking large amounts of water for irrigation purposes (for row and rice crops) out of this creek and pool. It appears that perhaps about 90% of the time, the water in Cadron Creek flows over the top of the dam, some 4 or 5 feet, and on occasions at a much higher level.

Upon a hearing, the trial court made the following findings of fact and conclusions of law: "(1) The court finds that the parties of this action occupy the legal status

as riparian owners bordering on Cadron Creek, a non-navigable stream; that the rights of the parties are governed by the doctrine of law of Riparian Rights, (citing cases), and as such riparian owners, parties to this action are entitled to the rights and privileges vested therein by law.

"(2) The court finds from the evidence adduced that a reasonable use of the water of Cadron Creek by the upper proprietors, the defendants (appellants) herein, as owners and lessees are to be permitted to pump and use the water from said creek when the water on the gauge of plaintiffs at the dam site, as the same is now located and constructed, shows a depth of 6 feet or more. When such depth measures less than 6 feet at such gauge the defendants should be enjoined from pumping or using said water.

"A permanent injunction will issue enjoining the defendants herein from pumping or using the waters of Cadron Creek at all times that said depth of the water at the dam site as revealed by the gauge of the plaintiffs is less than 6 feet."

As indicated, the City of Conway and appellants are riparian landowners (Conway to the extent of its 20-acre tract only) bordering on Cadron Creek. Cadron Creek being non-navigable, each riparian owner owns to the center of the bordering creek bed. The law of riparian rights applies and prevails in Arkansas and the rights of each riparian owner have been clearly defined and announced by this court many times.

Although our law follows the riparian theory of water rights rather than the theory of prior appropriation, the adherents to the riparian theory are themselves divided into two schools of thought. As is pointed out in the Restatement of Torts, in the Introductory Note preceding § 850, the riparian theory may be subdivided into the doctrine of natural flow and the doctrine of reasonable use, the two being inconsistent with each other. According to the natural flow theory, each riparian owner is entitled to have the watercourse maintained in its

natural state, not sensibly diminished in quantity or impaired in quality. Under this theory a riparian owner may withdraw water for domestic uses but not for such artificial uses as the irrigation of crops or the operation of a factory.

Under the reasonable use theory each landowner is entitled to make any reasonable use of the water, provided that such use does not unreasonably interfere with the beneficial use of the stream by others. Under this theory a riparian owner may use the water for irrigation or for any other purpose, the reasonableness of the use being the only measure of riparian rights.

In our prior cases we have not had occasion to make a choice between the two riparian theories. Upon two occasions we have recognized the existence of both theories, in this language: ''The general rule as to the rights of riparian owners may be thus stated: Every such proprietor is entitled to the usual flow of a stream in its natural channel over his land, undiminished in quantity and unimpaired in quality, subject to the reasonable use by upper proprietors, and with the right to make any reasonable use of the water necessary for his convenience or pleasure.'' *Meriwether Sand & Gravel Co.* v. *State,* 181 Ark. 216, 26 S. W. 2d 57.

In one of our most recent cases, *Thomas* v. *LaCotts,* 222 Ark. 171, 257 S. W. 2d 936, we held: ''A riparian owner is entitled to the unimpaired natural flow of a stream over his land, but this right is subject to reasonable use by upper proprietors. 2. The right of a riparian owner to take water inheres in the soil and it is vested. Our decisions go to the point that under the riparian doctrine no proprietor has priority in the use of water in derogation of another's rights. 3. The riparian doctrine in Arkansas is of common law origin and is distinct from the law of appropriation, common to many of the western states,'' (Headnotes 1, 2, 3), and in the opinion, we said: ''The riparian right does not depend upon use and is not lost by nonuse.''

It will be observed that both these quotations first state the natural flow theory and immediately follow it up with an expression of the reasonable use theory.

On the question of riparian rights of a borough which had acquired a 10-acre tract of land on a stream some distance from the borough, on which it constructed a reservoir for a supply of water to its inhabitants, the court, in *Haupt's Appeal* (1889), 125 Pa. 211, 17 A. 436, 3 L. R. A., 536, said: "If the authority of the plaintiff (the borough) were measured by its rights as riparian owner, it would be slender enough. It might indeed use the water for the domestic purposes incident to the said ten acres of land. If there were a tenant thereon, he could use it for watering his stock and for household purposes—for any useful, necessary and proper purpose incident to the land itself, and essential to its enjoyment. But that the rights of a riparian owner would justify the plaintiff in carrying the water for miles out of its channel to supply the Borough of Ashland with water is a proposition so palpably erroneous that it would be a waste of time to discuss it," and in *Wallace* v. *City of Winfield* (1915), 96 Kan. 35, 149 P. 693, the court held: (Headnote 3): "A city which purchases land abutting on a stream acquires the right of a riparian owner, which is the reasonable use of water for domestic and other ordinary purposes incident to the land, but it does not thereby acquire the right to divert or take water from the stream for the purpose of selling it to the inhabitants of the city without making compensation to those who are thereby deprived of water rights."

The City of Conway, as plaintiff, is not asserting what would be regarded as riparian rights under either theory. It seeks to take the water beyond the limits of the watershed and sell it commercially. Since that particular use of the water would not be permitted under either theory, the City is not in a position to assert any cause of action against the appellants.

We hold, therefore, that the trial court erred in holding, in effect, that the City of Conway had the right to

seize and use for its own use all the water impounded by its dam in Cadron Creek when the water level measured by the gauge on the dam falls to or below 6 feet. Conway's riparian rights are the same as any other riparian owner and no greater. Until there is insufficient water to serve the needs of each and all of the riparian owners, on the creek, their relative rights are not in question, for while the supply is plentiful (as it appears for more than 90% of the time) no need arises to apportion the water. When, however, a shortage is present, then the law, as indicated, of riparian rights comes into play and must apply.

Appellees' claim of rights superior to appellants, by adverse possession or prescription is, we hold, untenable. We are unable to find any act or acts on the part of Conway of an adverse claim or nature, or such as would put appellants on notice of any adverse claim. The dam was completed in 1952 and it is unquestioned that during the high water level or stage of Cadron Creek, the water flows over it. In fact, it appears that at no time has the water, impounded by the dam, flooded appellants' lands or been out of the Cadron Creek banks, and, as indicated, nothing has happened to put appellants on notice of any adverse claim by Conway.

"A lower riparian owner cannot acquire by prescription the right to the full flow of the stream, as against an upper owner's right to make proper use of the water." 56 Am. Jur., § 330, p. 769.

"No right to the waters of a stream can be acquired by prescription where the lower irrigator takes the water out of the stream at a point on his own land and uses such water only as the upper riparian proprietor permits it to pass down through his land; nor can the nonuser of the water by the upper riparian owner of land be invoked to strengthen the claim of appropriation or prescription by the lower riparian owner under like circumstances. Hence, an upper proprietor's knowledge that lower proprietors are using water taken out of a stream below him, and claim the right to use it, is not evidence of acquies-

cence on the part of the upper owner; nor does it, as against him, establish adverse use or constitute matter of estoppel." 30 Am. Jur., § 5, p. 600.

"The riparian owner receives the water as it flows to him by natural right, and in so doing he does not interfere with the rights of any other owner on the stream; and he can gain no prescriptive right to have the flow continue by the fact that he has received it without interruption by the upper owner for the prescriptive period. It may be that the upper owner has had no use for the water, but the mere fact that he had none, and did not attempt to make any use of it, cannot deprive him of any of his rights or entitle the lower owner to insist that the flow shall continue uninterrupted, in case the upper owner finds use for the water." *Farnham on Water,* Vol. 2, § 536, p. 1745.

Finally, appellees argue that under the authority of § 19-4202 and §§ 35-401-2-3, Ark. Stats., 1947, there is "authority in this State for a City to divert and take the waters from a stream for public use as a municipal water supply."

This might be true only in cases where the City had proceeded by eminent domain to acquire lands for waterworks' purposes. No such procedure was followed in this case.

It follows that the decree must be and is reversed and the cause remanded.

ED. F. McFADDIN, Justice (concurring). This case was carried over the summer recess so that further study might be given to it.[1] Also we invited a brief *amicus curiae,*[2] which is both scholarly and concise and has proved most helpful. To even list the cases, textbooks,

---

[1] During the summer recess, I had the pleasure of discussing water problems with Honorable Wells A. Hutchins, of California, the author of the volume, "Selected Problems in the Law of Water Rights in the West," and another volume soon to be published. He is a recogniezd authority. To list the cases and texts furnished at my request by Mr. Hutchins would unduly extend this opinion.

[2] This brief was by Honorable Joe C. Barrett of the Jonesboro Bar.

and Law Review articles consulted would require pages. Therefore this concurring opinion is merely a summary of *my individual* conclusions.

Water has become one of the major problems confronting Arkansas today: the lowering of the water table, the year of insufficient rainfall, and the recent use of water in irrigation — these combine to make the water problem very acute. We are faced with the necessity of legislation, certainly as to surface water and possibly also as to subterranean water.

There is no common law regulating the *appropriation* of water by riparian owners; and in the matter of *riparian* rights our Arkansas cases have never definitely stated whether we follow exclusively the rule of "reasonable use" or the rule of "uninterrupted flow". Neither have our Arkansas cases stated the extent of riparian rights. All of these matters should receive legislative attention in order to forestall conflict of claimed rights under various theories.

In the present case, the City of Conway has been getting its water supply from the Cadron Creek since 1912. Until this litigation, there had been no question raised about such appropriation, because no one other than Conway had any occasion to use the water. But when we had the dry seasons plus the lowering of the water table and the beginning of irrigation, land owners along the Cadron Creek began to complain. Because Conway had used the water from Cadron Creek for so many years without question, Conway saw no occasion to invoke the Statute that gave it the right of eminent domain. (§ 35-403 et seq. Ark. Stats.) Now Conway finds that long continued use and unquestioned appropriation do not constitute limitations or estoppel. So Conway loses in the present case because it was the plaintiff and its case was without equity. Yet it must be pointed out that the appellants herein have not proved *their rights* to take water from Cadron Creek: they have merely proved that Conway had no such right. It is important that this fact be emphasized.

I summarize some of my personal conclusions on riparian rights:

(1) It is possible for riparian rights to exist on both sides of the stream up to the farthest extent of the water shed. But this riparian right is an ever *contracting* right and never an *expanding* right: that is, the riparian right may grow smaller by conveyances, but can never grow larger. Suppose the Sovereign of the soil conveys a tract of 160 acres adjacent to the stream. The extent of the Sovereign's grant limits the riparian use of the water; and a tract lying immediately behind the 160-acre conveyed tract has NO riparian rights because the grant has cut off such other land from the stream. If the grantee of the 160-acre tract should convey the 80 acres *immediately adjacent* to the stream, the riparian rights contract to the conveyed tract; and the remaining 80-acre tract—not adjacent to the stream — loses all riparian rights. Should the riparian owner of the 80-acre tract on the stream later purchase the land behind the 80-acre tract such purchased land would not re-acquire riparian rights. I go into details with this illustration to explain thoroughly what I mean by riparian rights being "ever contracting and never expanding". In the case at bar, none of these appellants has proved that his lands are riparian to Cadron Creek in keeping with the above illustration. Appellants have not proved that they are riparian because they have not proved the extent of their conveyances and their boundaries. The decision of the majority does not settle such point.

(2) As previously mentioned ,there is a conflict[3] between the "reasonable use" theory and the "uninterrupted flow" theory. If the "reasonable use" theory should prevail in Arkansas, the waters from Cadron Creek *might* be used by a real riparian owner for the irrigation of a rice crop. But if the "uninterrupted flow" theory prevails in Arkansas, then even a real riparian owner cannot use the water of Cadron Creek

---

[3] This conflict is discussed in Restatement of the Law, Volume 4 on Torts, at page 339 et seq.

for the irrigation of a rice crop; because under the "uninterrupted flow" theory, a real riparian owner can use the water from the stream *only for domestic uses*: that is, for his household uses, his cattle uses, and the irrigation of his garden for his own household use. He cannot use the water — if any other riparian owner complains —for the irrigation of crops for sale, or for selling of the water (as Conway has been doing in the case at bar). When we understand such limited use of the water even by a true riparian owner, we see that none of the appellants in this suit has been using the water for a truly riparian use, and so they cannot prevail if any real riparian owner should complain, and if we should adopt the "reasonable use" theory.

I could point out other problems about water in Arkansas, but those stated show our difficulties and emphasize the fact that Conway lost in the case at bar, but the appellants did not establish any riparian rights.