**OKLAHOMA WATER RESOURCES BOARD,** *Plaintiff in Error,*
and
**The City of Oklahoma City, a municipal corporation, Intervenor,**

v.

**CENTRAL OKLAHOMA MASTER CON-SERVANCY DISTRICT, De-**fendant *in Error.*

No. 42527.

Supreme Court of Oklahoma.

May 14, 1968.

Supplemental Opinion on Rehearing
March 4, 1969.

G. T. Blankenship, Atty. Gen. of Oklahoma, Brian H. Upp, Asst. Atty. Gen., Roy H. Semtner, Municipal Counselor, Robert H. Anderson, Asst. Municipal Counselor, for plaintiff in error and intervenor.

Sam F. Whitlock, Norman, for defendant in error.

Frank Carter, by Charles G. Huddleston, Enid, Otjen, Carter & Huddleston, Enid, of counsel, general counsel, Oklahoma Farm Bureau, amicus curiae.

Glenn O. Young, Sapulpa, for Landowners Protective Ass'n of State of Oklahoma, amicus curiae.

Dr. Joseph F. Rarick, Norman, amicus curiae.

McINERNEY, Justice.

This case presents competing claims by Oklahoma City (the City) and the Central Oklahoma Master Conservancy District (the District) to the water formerly flowing in the bed of East Elm Creek, a tributary of Little River. The waters of that creek became impounded when Elm Creek Dam was completed by the City in Oct. 1965, to form what is now called Stanley Draper Lake.

The City's claim to the water is predicated on its ownership of nearly all the land lying within the watershed of the creek. This land was acquired by successive purchases beginning in 1958. Since the stream of the creek was supplied by diffused surface waters originating on its own land, the City argues that it had "the absolute right to capture, store and use such water without regard to the claims" of the District. The District relies on its prior and superior appropriative rights to "all unappropriated waters in the Little River *and its tributaries* originating above that point where the main stem of the river intersects the Cleveland-Pottawatomie County Line * * *" (emphasis supplied). These rights, we are urged, attached in April 1953 in favor of the District's transferor, the Bureau of Reclamation of the United States Department of Interior, and were later perfected through undisputed compliance with the terms of 82 O.S.1951, § 91. According to the District, its rights as successor to the original appropriator (pursuant to the authority of 43 U.S.C. § 615aa) extend to all sources of supply for the main stream of East Elm Creek "clear back" to the farthest limits of the watershed. In other words, the District takes the position that *all waters* physically tributary to a stream system are legally a part of the stream and subject to the claims of prior appropriators.

The Oklahoma Water Resources Board, where the proceeding under consideration had its inception, found that while East Elm Creek was a "definite stream" within the meaning of 60 O.S.1951, § 60, the District is not entitled to procure a release of the impounded water because under the provisions of the cited statute, the City, as the owner of the entire watershed (less 240 acres), has "the right to capture water falling on its property for private use" and that water was hence "not subject to appropriation" as public water under the terms of 82 O.S.1951, § 91. On appeal to the district court the ruling of the Board was reversed as "clearly erroneous". The City was directed "to forthwith release [from its Draper Lake reservoir] the average annual run-off of surface waters occurring north of * * * [the dam] within the watershed of East Elm Creek * * * impounded [there] as of October 1, 1966." Under review here is the district court's judgment from which the City seeks corrective relief.

Before us is a conflict of rights between a prior appropriator of a stream system and a subsequent purchaser of land claiming absolute ownership of surface waters falling within its watershed. The extent of a prior appropriator's claim, if any, to surface waters supplying the stream to which his rights stand attached presents a question of first impression in this jurisdiction.

Surface waters are those which, in their natural state, occur on the surface of the earth in places other than definite streams or lakes or ponds. They may originate from any source and may be flowing vagrantly over broad lateral areas or, occasionally for brief periods, in natural depressions. The essential characteristics of such waters are that their short-lived flows are diffused over the ground and are not concentrated or confined in channel flows of definite streams, nor are they concentrated or confined in bodies of water conforming to the definition of lakes or ponds. Davis v. Fry, 14 Okl. 340, 78 P. 180, 182, 69 L.R.A. 460; Town of Jeffer-

son v. Hicks, 23 Okl. 684, 102 P. 79, 82, 24 L.R.A.,N.S., 214; Clark, Waters and Water Rights, Sec. 52.1(A), p. 300.

The term "surface water", traditionally employed by the common law, is somewhat misleading. This is so because all waters appearing on the surface of the earth, be they found in definite streams or elsewhere, are technically surface waters. In more recent times courts and scholars alike have preferred "diffused surface water" as a more accurate and descriptive expression. Hutchins, Selected Problems in Western Water Law, p. 3; Clark, Waters & Water Rights, Vol. I, Sec. 52.1(A), p. 302; See Dolson, Diffused Surface Waters and Riparian Rights, Legal Doctrines in Conflict, 1966 Wis.L.Rev. 58. As the two terms, "surface water" and "diffused surface water", are synonymous, both will be used in this opinion.

Since pre-statehood days the system of prior appropriation has coexisted in Oklahoma with that of recognized riparian and proprietary rights in water. Gates v. Settlers' Milling, Canal & Reservoir Co., 19 Okl. 83, 91 P. 856. This court has not been called upon before to correlate these two separate doctrines of property which are to a substantial degree incompatible. There exists no controlling precedent to guide us in determining whether or how diffused surface waters may be subjected to appropriation under 82 O.S.1951, § 91. See Rarick, Appropriator vs. Riparian, A Preliminary Examination, 10 Okl.L.R. 416, 419, 423, 424; Hutchins, The Oklahoma Law of Water Rights, 1960 ed., pgs. 21, 22.

An appropriative water claim, once properly initiated in compliance with local statutes, is governed by the law in existence at that time, even though it may remain inchoate for some period thereafter. When the rights are finally perfected, they relate back to the initiation of the appropriation. 82 O.S.1951, § 1; Gay v. Hicks, 33 Okl. 675, 124 P. 1077, 1081; Gates v. Settlers' Milling, Canal & Reservoir Co., supra, 91 P. at 856; Maricopa County, etc. v. Southwest Cotton Co., 39 Ariz. 65, 4 P.

2d 369, 382, 383; see also Hutchins, The Oklahoma Law of Water Rights, p. 32.

The time of initiation, so critical in determining the priority and quantum of appropriative rights, is controlled here by the terms of 82 O.S.1951, § 91. That statute was in effect when the Secretary of Interior notified the Okla. Planning and Resources Board (the predecessor of the Water Resources Board) of the Government's intention to utilize for its Little River Basin project certain waters unappropriated *at that date*. Among the waters described in the notice were those of East Elm Creek. The Secretary subsequently met *all* the remaining requirements of Sec. 91. By force of that statute and the Secretary's timely compliance with its terms, the waters of the creek were thus "withdrawn" from appropriation by others, and the Government's claim to them, when later perfected, related back, by operation of law, to the date of its initiation in April of 1953. 82 O.S.1951, § 1. On the strength of these arrangements Congress authorized public funds to be appropriated for the Little River reservoir project (also known as the Norman project) which ultimately resulted in the construction of Lake Thunderbird. 43 U.S.C. §§ 615aa and 615hh. The district succeeded to these rights of the United States by transfer. One to whom a water right is transferred acquires the priority of the initial appropriation by the person with whom he is in privity of estate. 93 C.J.S. Waters § 184, p. 956.

Under the provisions of 60 O.S. 1951, § 60, the landowner cannot assert ownership in water "forming a definite stream". His rights therein are purely riparian. Baker v. Ellis, Okl., 292 P.2d 1037; Smith v. Stanolind Oil & Gas Co., 197 Okl. 499, 172 P.2d 1002. When the appropriator's claim attached, East Elm Creek was, and until dammed by the City remained, a "definite stream" within the meaning of 60 O.S.1951, § 60, the statute then in effect. The Board so found. Its finding on this issue of fact is amply supported by the "reliable, material, probative

and substantial competent evidence". In this state of the record this court may not substitute its judgment as to the weight of the evidence for that of the Board. 75 O. S.Supp. 1963, § 322(1) (e).

■■ In Oklahoma, "[s]urface water is that which is diffused over the surface of the ground derived from falling rains and melting snows, and continues to be such until it *reaches some well defined channel* in which it is accustomed to and does flow with other waters, *whether derived from the surface or springs*; and it then becomes the running water of a stream and ceases to be surface water" (emphasis ours). Cole v. Missouri, K. & O. R. Co., 20 Okl. 227, 94 P. 540, 541, 15 L.R.A.,N.S., 268. Where the natural conformation of the surrounding country necessarily collects therein so large a body of water, after heavy rain or the melting of large bodies of snow, as to require an outlet to some common reservoir, and where such surface water is regularly discharged through a well-defined channel which the force of the water has made for itself, and which is the accustomed channel through which it flows or has ever flowed, it constitutes a defined channel. It is not essential to the existence of a "definite stream" that its source of supply should be spring water. It may be surface water collected within a large watershed from rain and melted snow which concentrates and cuts for itself a well-defined channel and regularly discharges through such outlet. Nor is it essential that there be a constant and continuous flow of water. The supply is sufficiently permanent, if it appears that the flow of water recurs with some degree of regularity in a well-defined channel. The determinative question in every case is whether the water precipitated in the form of rain or snow has formed for itself a visible course or channel, and is of sufficient magnitude or volume to show frequent action of running water. Chicago, R. I. & P. Ry. Co. v. Groves, 20 Okl. 101, 93 P. 755, 761, 22 L.R.A.,N.S., 802; Garrett v. Haworth, 183 Okl. 569, 83 P.2d 822, 824; Branch v. City of Altus, 195 Okl.

625, 159 P.2d 1021, 1022; see also, Hoefs v. Short, 114 Tex. 501, 273 S.W. 785, 40 A.L.R. 833; Brown v. Schneider, 81 Kan. 486, 106 P. 41.

Nunn v. Osborne, Okl., 417 P.2d 571, urged upon us by the City, presents facts different from those in this case. The water there in question was that captured and impounded by the landowner's dam during heavy rainfall from overflow in "shallow depressions" and from "a natural drainway". The dam was situated within a very short distance from the origin of the watershed. There was no evidence of a well-defined channel with a flow of sufficient magnitude or volume to show frequent action of running water. The trial court accordingly determined that the water collected by the dam was surface water and we affirmed its judgment as "well supported by the evidence presented."

Although its flow may have been intermittent and its stream was supplied by diffused surface waters rather than springs, East Elm Creek, before it was permanently interrupted by damming, unquestionably met our definition of a "definite stream".

■ The provisions of 82 O.S.1951, § 91, which authorize certain officers of the United States to procure an appropriation of "waters within the State", does not apply to private waters but solely to unappropriated public waters. 82 O.S.1951, § 25. The state is without authority to transfer one man's property to another, but its power to control unappropriated public waters is plenary. Definite nonnavigable streams are public waters. The state may either reserve to itself or grant to others its right to utilize these streams for beneficial purposes. Grand Hydro v. Grand River Dam Authority, 192 Okl. 693, 139 P.2d 798, 801; see also King v. Chamberlin, 20 Idaho 504, 118 P. 1099, 1101; State ex rel. State Game Comm. v. Red River Valley Co., 51 N.M. 207, 182 P.2d 421, 466.

■ At the time the appropriation of East Elm Creek waters became effective (April, 1953), the creek was a definite stream and the riparian owners possessed

no right, either at common law or by virtue of any statute then in effect, to obstruct that stream. Grand Hydro v. Grand River Dam Authority, supra; Chicago, R. I. & P. Ry. Co. v. Groves, supra, 93 P. at 759; Culbertson v. Greene, 206 Okl. 210, 243 P.2d 648. Its waters were public and remained unappropriated. The state could effectively transfer its rights in those waters to the Bureau of Reclamation. The District, as the latter's privy, must hence be regarded here as standing in the very same position as the state itself.

Under the terms of 60 O.S. 1951, § 60, as well as at common law, diffused surface waters lose their original character when they reach some well-defined channel in which they are accustomed to, and do, flow with other waters, or when they reach some permanent lake or pond. They then become "a constituent part" of the stream, lake or pond, as the case may be. Cole v. Missouri, K. & O. R. Co., supra, 94 P. at 542; Davis v. Fry, supra; Town of Jefferson v. Hicks, supra, 102 P. at 82; Broadbent v. Ramsbotham, 11 Ex. 602, 156 Eng.Rep. 971, 976 (1856); Clark, Water and Water Rights, Sec. 52.-1(A), p. 301. Diffused surface water may be appropriated by the owner of land over which it flows and become his property *when captured by him before it enters a definite stream.* Thereafter it is no longer *subject to appropriation by the landowner.* Broadbent v. Ramsbotham, supra; King v. Chamberlin, supra; Town of Jefferson v. Hicks, supra; Everett v. Davis, 18 Cal.2d 389, 115 P.2d 821, 823. The civil-law rule is substantially the same. Miller v. Letzerich, 121 Tex. 248, 49 S.W.2d 401, 85 A.L.R. 451, 456; Maricopa County, etc. v. Southwest Cotton Co., supra, 4 P.2d at 372.

The City did not capture the surface water falling within its watershed. Instead, it dammed the bed of the creek. In other words, it failed to reduce the surface water to possession *before* that water lost its original character. Rather, it impeded the flow of a definite stream already formed. The building of a dam on a nonnavigable stream does not change the status of the stream so as to reconvert some or any part of its former flow into the classification of surface water. The construction of a dam across a definite stream is not equated to the capture of surface water supplying that stream. It does not have the effect of reducing the flow of the stream to possession, control, or management in such a sense as to change its legal character and make it property. Under the terms of 60 O.S.1951, § 60, as it stood prior to its 1963 amendment, the proprietor of the dam constructed across a stream could not acquire ownership of any waters impounded within it. One who constructs a dam across a definite stream may not claim any greater interest in the impounded water of the stream than he had in that stream before the dam was erected. City of Syracuse v. Stacey, 169 N.Y. 231, 62 N.E. 354; Akron Canal & Hydraulic Co. v. Fontaine, 72 Ohio App. 93, 50 N.E.2d 897, 901; 67 C.J., Waters, § 365, p. 918; 93 C.J.S. Waters § 145, p. 858.

In Jan. 1961, when the City was granted a license to construct Stanley Draper Dam and to interrupt the flow of East Elm Creek, its rights to the creek were governed by 60 O.S.1951, § 60, the statute then in force. Under the terms of that statute the City had no right to store surface waters in the bed of a definite stream and continue to claim them as its property. Nor could it obstruct the course of a definite stream. Culbertson v. Greene, supra, 243 P.2d at 649; Garrett v. Haworth, supra, 83 P.2d at 823. Its rights in that stream, which were not proprietary but merely riparian, could not be increased by the construction of the dam. The City does not contend here that its riparian rights are adversely affected by the District's prior appropriation. Its claim to the water in question is predicated solely on its asserted ownership of the surface waters originating within the watershed.

The Board, as constituted in Jan. 1961, apparently recognized that the City could

not by construction of the dam defeat the appropriative rights the District had acquired in the stream. In its order approving the plans submitted by the City, the Board inserted an express condition that the City either procure an adjudication of its priority to the water in question or provide for a release of "waters originating above the dam site and in the reservoir area if seepage flows from the structure do not compensate for water previously withdrawn by the United States through the Bureau of Reclamation." The City then proceeded to build the dam with full notice of the District's claim.

■ We hold that the construction of Draper Dam did not change the legal status of East Elm Creek as a definite stream, nor did it amount in law to an appropriation of surface water by capture. It follows that the prior right of the District to the flow of the creek remained unaffected by the construction of Draper Dam.

Our conclusion makes it unnecessary to decide whether, by capture, the City would have acquired absolute ownership of diffused surface water originating in its watershed, or only the right to a reasonable use thereof. See Kinyon & McClure, Interferences With Surface Waters, 24 Minn.L.R. 891, 915; Dolson, Diffused Surface Water and Riparian Rights: Legal Doctrines in Conflict, 1966 Wisc.L.R. 58, 95, 97, 114.

■ The terms of H.B. No. 662, S.L. 1963, Ch. 205, pgs. 267 et seq., which effected an amendment to 60 O.S.1961, § 60 and to 82 O.S.1961, § 1, have no application to the present case. This act was passed both *after* the initiation of the appropriation held by the District and *after* the commencement of the Draper Dam project. The rights of the District and of the City vested under the law in existence before the cited amendment was enacted.

■ A "vested right" is the power to do certain actions or possess certain things lawfully, and is substantially a property right. It may be created either by common law, by statute or by contract. Once created, it becomes absolute, and is protected from legislative invasion by Art. 5, Secs. 52 and 54 of our Constitution. Crump v. Guyer, 60 Okl. 222, 157 P. 321, 2 A.L.R. 331; see also Caddo Electric Cooperative v. State, Okl., 391 P.2d 234, 235, 240 and City of Beverly Hills v. City of Los Angeles, 175 Cal. 311, 165 P. 924.

There is no merit to the City's final complaint "that nowhere in the record is there either stipulation or evidence showing that any natural flow of East Elm Creek *reached Lake Thunderbird* [the District's reservoir] prior to construction of the [Draper] dam" (emphasis added). That issue was not tendered below, and in view of our conclusion here it is not material whether or not the water in question ever reaches Thunderbird Lake.

The trial court's judgment is free from errors of law. It is accordingly affirmed.

JACKSON, C. J., IRWIN, V. C. J., and WILLIAMS, BERRY, HODGES and LAVENDER, JJ., concur.

BLACKBIRD, J., concurs in result.

### SUPPLEMENTAL OPINION ON REHEARING

IRWIN, Chief Justice.

The city urges on rehearing that the law in effect before the 1963 amendment to our statutes invested it with a riparian right to the reasonable use of the stream waters in question.

■ There is little, if any, dissent from the generally accepted view that riparian status does not entitle a municipality to abstract stream water for distribution to its inhabitants for domestic purposes. Such abstraction is deemed to fall outside the ambit of a riparian owner's traditional right to make a reasonable use of the water. We agree with this view and accordingly hold that the city's riparian status

does not afford any basis for its claim to the stream water of Elm Creek. Town of Purcellville v. Potts, 179 Va. 514, 19 S.E.2d 700, 141 A.L.R. 633; Pernell v. City of Henderson, 220 N.C. 79, 16 S.E.2d 449; Harrell v. City of Conway, 224 Ark. 100, 271 S.W.2d 924; 56 Am.Jur., Waters, § 347, p. 783; 56 Am.Jur. Waterworks, § 43, p. 949; 94 C.J.S. Waters § 226, p. 7; Annotation in 141 A.L.R. 639. Our decision in Smith v. Stanolind Oil & Gas Co., 197 Okl. 499, 172 P.2d 1002, is not in point here and does not support the city's claim. That case merely holds that a riparian proprietor may convey to another the right to a reasonable use of stream water on non-riparian land. Nor is City of Stillwater v. Cundiff, 184 Okl. 375, 87 P.2d 947, applicable here. There we dealt with a city's proprietary claim to water rather than with the usufructuary right of a riparian owner.

City also contends the district did not comply with the pre-1963 statutory conditions precedent for the perfection of a water right, i. e., hydrographic survey and adjudication proceedings. We hold said conditions precedent were procedural requirements, which have been eliminated by the 1963 amendments to the pertinent sections of Title 82. No one has a vested right in any particular mode of procedure for the enforcement or defense of his rights. Hence the general rule that statutes will be construed to be prospective only does not apply to statutes affecting procedure; but such statutes, unless the contrary intention is clearly expressed or implied, apply to all actions falling within their terms, whether the right of action existed before or accrued after the enactment. Shelby-Downard Asphalt Co. v. Enyart, 67 Okl. 237, 170 P. 708; Fry v. Wolfe, 106 Okl. 289, 234 P. 191.

BERRY, V. C. J., and DAVISON, WILLIAMS, JACKSON, HODGES, LAVENDER and McINERNEY, JJ., concur.

BLACKBIRD, J., concurs in results.