Sam LINGO et al *v.*
CITY OF JACKSONVILLE

75-9                                    522 S.W. 2d 403

Opinion delivered May 5, 1975

64

*Chas. A. Walls, Jr.,* for appellants.

*Ben Rice,* for appellee.

FRANK HOLT, Justice. This case involves a dispute concerning subterranean water rights. Appellee, the City of Jacksonville which is located in Pulaski County, purchased several small parcels of land in Lonoke County. Appellee then constructed five water wells on its land. The water is pumped approximately five miles to the city to supplement its water supply for sale to its customers. Appellants are homeowners, fish and rice farmers and a manufacturer in the area of appellee's well field and also within the same watershed. They depend upon their individual or several wells for their water supply. Appellants petitioned the chancellor to enjoin appellee from pumping water, asserting its removal would deplete the quantity and quality of the existing supply. Appellants further alleged that appellee, as a public entity, should compensate the landowners for the water removed. The chancellor's order enjoined the appellee from "pumping more than 650 gallons per minute from any of the five individual water wells owned by said city, in excess of eight hours during any twenty-four hour period." The other

provided for masters to monitor the water level of the wells and report to the court at least on monthly intervals for six months or such other intervals as the court might direct. The court retained jurisdiction "until further orders of this court." From this order comes this appeal.

Appellants contend for reversal that the chancellor erred in not enjoining appellee from removing water from under its land, as a riparian owner, to a distant point for sale. Appellants argue that the owner of riparian rights, under the reasonable use theory, can only use the water on the overlying land in the absence of an eminent domain proceeding and just compensation. We cannot agree.

The appellee, as a landowner, is a riparian owner exactly the same as are the appellants. Incidental to that ownership, each is entitled to a reasonable use of their respective subterranean water rights. In *Jones* v. *Oz-Ark-Val Poultry Co.*, 228 Ark. 76, 306 S.W. 2d 111 (1957), we said:

> As to water rights of riparian owners, this State has adopted the reasonable use rule. *Harris* v. *Brooks*, 225 Ark. 436, 283 S.W. 2d 129; *Harrell* v. *City of Conway*, 224 Ark. 100, 271 S.W. 2d 924. We see no good reason why the same rule should not apply to a true subterranean stream or to subterranean percolating waters.

In *Harris* v. *Brooks*, 225 Ark. 436, 283 S.W. 2d 129 (1955), we said:

> It has been stated that each riparian owner has an equal right to make a reasonable use of waters subject to the equal rights of other owners to make the reasonable use. **** The purpose of the law is to secure to each riparian owner equality in the use of water as near as may be by requiring each to exercise his right reasonably and with due regard to the rights of others similarly situated.

We then quoted with approval:

> 'The law accords equal protection to the interests of all riparian proprietors in the use of water, and seeks to

promote the greatest beneficial use of the water, and seeks to promote the greatest beneficial use by each with a minimum of harm to others. **** Hence it is only when one riparian proprietor's use of the water is unreasonable that another who is harmed by it can complain, even though the harm is intentional.'

We said further:

In all our consideration of the reasonable use theory as we have attempted to explain it we have accepted the view that the benefits accruing to society in general from a maximum utilization of our water resources should not be denied merely because of the difficulties that may arise in its application. In the absence of legislative directives, it appears that this rule or theory is the best that the courts can devise.

It is permissible for a riparian owner to remove subterranean and percolating waters and use it away from the lands from which it was pumped if it does not injure the common supply of other riparian owners. *Jarvis* v. *State Land Department*, 106 Ariz. 506, 479 P. 2d 169 (1970); and *Higday* v. *Nickolaus*, Mo. App., 469 S.W. 2d 859 (1971). The rationale is that adjacent riparian owners cannot complain if they are not damaged by the removal. In the case at bar, the City of Jacksonville, a riparian owner in the same subterranean watershed, will use the water five miles distant for the consumption of its customes or the public. A study of the impact of appellee's usage of its waterfield upon the existing supply in the area was made by the Arkansas District of the Water Resources Division of the U. S. Geological Survey in cooperation with the Arkansas Geological Commission. The study reflected a lowering of the water level in the immediate area of the appellee's wells by six feet at the end of one year if the proposed pumpage of 3,000,000 gallons per day was permitted. The lowering of the level or "cone of depression" at the well site tapered off to zero after a short distance. The study indicates that at this rate of pumpage for an additional ten years the water level would only be reduced by approximately one inch per year.

According to appellee's expert witness, the "drawdown" of the water level or "cone of depression" will be six feet at the immediate site of the wells and gradually taper to zero after a short distance. The "drawdown" at each well would stabilize after 621.378 days' usage at levels not exceeding 7.8 feet. The quality of the water should not change.

Appellants' expert witness was of the view that the water level in the watershed was declining annually. He estimated that the "drawdown" would vary from 20 to 30 feet and appellee's proposed use would adversely affect appellants' water supply. He personally had made no measurements in water levels in the area and based his opinion upon his general knowledge in the Grand Prairie watershed and a study of federal and state records. Appellants adduced evidence from landowners in the immediate area and from other areas in the watershed. According to their experience, the use of multiple wells in an area diminished and had an adverse effect upon the sufficiency of their water supply.

To insure that the appellants are not damaged, the chancellor retained jurisdiction and, as indicated, restricted appellee's use. The concern of the chancellor is demonstrated in his well reasoned memorandum opinion stating in part:

> The City of Jacksonville would, in the opinion of this Court, have a right to the reasonable use of the water in question *so long* as that use does not interfere with or damage the domestic or agricultural or other lawful water rights of the adjacent property owners. **** This Court finds that the evidence is that the operation of the wells in question, unless restricted, will to some degree diminish the water table in the immediate vicinity of the wells. The City of Jacksonville might even deplete the area of water, and irreparably damage the adjacent landowners' right to use the water in question. Therefore, this Court will restrict the City of Jacksonville by injunction from removing water from the wells in question to the extent that it would damage the plaintiffs. **** It is difficult at this time for the Court to find with any confidence the exact amount of water that may be removed without damage to the landowners. But

after carefully studying the evidence, this Court concludes that the pumps in question, individually, may not be operated during any one twenty-four hour period for more than eight hours. **** This Court will continue to exercise jurisdiction over the parties and the matter in question so long as may be necessary to protect the property rights of the interested parties. Of course, the Court will be available for modification of the injunction should it develop that this restriction is either too lenient or too harsh.

Masters were appointed "for the purpose of measuring the water level of certain wells located in Lonoke County" to ascertain the effect on the water level by appellee's usage.

Since the appellee is a riparian landowner, it is clear from what we have said that its use of the underground water is not necessarily a subject for eminent domain proceedings. However, we do not foreclose the right of the appellants, upon proper proof, to show special damages suffered by them by appellee's unreasonable use of the water supply as a riparian owner.

Affirmed.