Fred CUNNINGHAM, as Executor of the Last Will, Testament, and Estate of Emma L. Bradfield, deceased, Plaintiff in Error,

v.

J. W. McCONNELL, Jr., Defendant in Error.

No. 40060.

Supreme Court of Oklahoma.

June 4, 1963.

**430**

Fred Cunningham, Hobart, pro se, and Executor of Last Will, Testament and Estate of Emma L. Bradfield, deceased.

Max Carder and Tolbert & Gillespie, Hobart, for defendant in error.

BERRY, Justice.

This action, originally brought by A. F. Bradfield, now deceased, revived prior to trial in his Executrix, Emma Bradfield, and later revived again in Emma Bradfield's Executor, proceeded to trial on the amended petition of Emma Bradfield, herein referred to as plaintiff, to enjoin J. W. McConnell, Jr., herein referred to as defendant, from interfering with the natural flow of surface waters in such a way as to injure plaintiff. Defendant filed cross-petition which is not involved on this appeal.

For the sake of brevity, we will only consider the pleadings and proceedings which are relevant to this appeal. Lena Linkugel intervened as a party plaintiff in the cause below but is not now involved as a party herein.

Plaintiff's petition alleges that Emma and A. F. Bradfield, husband and wife, have since 1959 been owners and in possession of the NW/4 of Sec. 6, Township 5N, Range 19W, I.M., in Kiowa County, Oklahoma; and that defendant owns the quarter section of land due north of plaintiff's section and separated therefrom by a county road; that the land immediately north of defendant's land is "relatively level" and surface water naturally flows on defendant's land which has "depressions upon it into which water naturally drains and stands" and that normally some water flows from defendant's land to plaintiff's land "in moderate amounts at widely diffused points in times of heavy rainfall"; that sometime in 1959 defendant constructed a dam, or levee, on the north boundary of his land which diverted the natural flow of surface water, causing it to concentrate and flow from west to east and to the northeast corner of defendant's land which in turn resulted in a concentration of the surface waters into a waterway constructed within the east boundary of defendant's land and then discharged and deposited onto the northeast corner of plaintiff's land.

Plaintiff alleges that she has received and will continue to receive irreparable damage to her crops and land surface, for which she seeks relief and asks that defendant be enjoined from "maintaining said dikes, dams, or levees" which obstruct the natural flow of surface waters.

Defendant's answer admits certain allegations but denies that the natural drainage of his property onto the plaintiff's land was at "widely diffused points". Defendant alleges "that the natural and historical drainage" of defendant's land was to his southeast corner, which is the same point that water now flows from defendant's land; that plaintiff has constructed an unlawful dike beginning at the northeast corner of her premises and running west and parallel to the county road "to such an extent as to back up and deter the natural flow of water onto the county road and impounding the same on the land of this defendant"; that "if the plaintiff has suffered any damage" it is caused by a break in the dike resulting in "channeling the water onto the land of the plaintiff"; that the removal of the dike would "diminish or alleviate" any damage to the plaintiff as the result of the drainage of surface waters.

Defendant denies any damage to the plaintiff caused by any act on his part.

Plaintiff's reply admits a small dike had been built on the northeast corner of her property, but denies that it caused any waters to "back up" onto defendant's land or that it in any way damaged defendant. Plaintiff asks that in the event she is ordered to remove her dike, then defendant should be ordered to remove his dike on his north boundary.

The trial court found generally for defendant as against plaintiff's petition for injunctive relief. From the order overruling plaintiff's motion for a new trial, plaintiff appeals.

In this appeal plaintiff urges two propositions: (1) the decision is not sustained by the law and hence the judgment is contrary to law; and (2) there is no competent evidence supporting the judgment, which is contrary to law and to the evidence. We shall discuss the two propositions as one.

Plaintiff's evidence tends to show that prior to 1957 surface waters would accumulate after a heavy rain and stand on the Weiss land which adjoins defendant's property on the north; that the inundation would cover as much as 25 acres of Weiss's land and would gradually recede and diminish in a few days to an area of about 5 acres which would remain covered by water indefinitely; that in 1957 defendant, with Weiss's cooperation, removed and leveled the fence row between their properties and constructed a waterway which drained to the east from the northwest corner of defendant's land to the northeast corner of defendant's land; that defendant continued the waterway from that point down and inside his fence row to his southeast corner; and that in 1959 defendant widened his east waterway.

Plaintiff's evidence further tends to show that prior to 1959 the surface waters from defendant's land drained across in a southeasterly direction and were deposited at his southeast corner, aided to some extent by a borrow ditch running on each side of the county road which separated defendant's land from that of the plaintiff; that the land in the area looked flat to a casual observer but the drainage pattern could be detected by examining the land surface; that from the northeast corner of defendant's land to the southeast corner, the elevation changed one "footfall" every 450 feet; that prior to defendant's widening of his waterway on the east border, the surface waters would, after leaving defendant's premises, travel east beyond plaintiff's land before continuing south; that thereafter the surface waters concentrated and the flow and drainage increased in velocity to such an extent that it "washed" a "gully" across the road and "punched a hole" and

channeled like a "pipeline" some 125 feet west of plaintiff's northeast corner and cut a "zig zag" course inside the east boundary of plaintiff's property line and damaged an estimated five acres of plaintiff's land.

Plaintiff's evidence also tends to show that a dike or "pile of dirt" had been placed on plaintiff's northeast corner for the purpose of diverting surface waters from her land; that prior to defendant's waterways being built the road had washed out but "no more than just ordinarily like what you would call a buffalo wallow. It never washed out bad, no, sir." Plaintiff tendered to the trial court an offer to remove the dike from her premises.

Defendant's evidence tends to show that he had cooperated with his neighbor, Weiss, by removing the fence row so that Weiss's land would drain; that due to farming, the fence rows between their premises had become built up in such a way as to interfere with the natural drainage and cause water to stand and accumulate; that they removed the fence row and scraped a ditch where the fence row was; that it is the same now as it was in 1957; that the east ditch running north and south was first built in 1957 but widened in 1959; that no washing occurred "to speak of" after 1957; that the worst washing of the road occurred in 1959; that the fence row between plaintiff's land and the land to the east changed the topography so that the natural flow continued south rather than southeast from plaintiff's northeast corner; that prior to plaintiff's dike in 1947 the surface waters naturally drained onto plaintiff's land; that after plaintiff's dike was built the waters accumulated on the road and backed up onto defendant's land and would eventually drain off to the east onto plaintiff's neighbor; that the drainage of surface waters in that area has been troublesome; that the county commissioner had proposed a plan to alleviate this problem to plaintiff's husband (the original plaintiff) who rejected same; that prior to defendant's waterways ducks were seen swimming in the accumulated water on the county road; that due to the

break in the west portion of the dike the surface waters no longer accumulated on the road and backed up onto defendant's land but channeled through the break in plaintiff's dike and caused the road to wash out as it did in 1959; that when the defendant's land had soaked up water after a rain, the water would flow with as much velocity from northwest to southeast as it would through defendant's diversion channels and in the same quantities; that water still accumulates and stands on the Weiss property after defendant constructed his waterways.

■ Plaintiff cites Gregory v. Bogdanoff, 307 P.2d 841, in which we said: "This court has long given its approval to the 'Common Enemy Doctrine' in a modified and restricted sense. * * * each proprietor may divert the water, cast it back or pass it along to the next proprietor, provided he can do so without injury to such adjoining proprietor. * * * no one is permitted to sacrifice his neighbor's property in order to protect his own."

Plaintiff also cites 93 C.J.S. Waters § 116, p. 815; Culbertson et ux. v. Greene, 206 Okl. 210, 243 P.2d 648; and Rainey v. Cleveland, 203 Okl. 283, 220 P.2d 261.

Although we agree with the rule set out, we do not deem it controlling in the case before us.

It is significant that in Gregory v. Bogdanoff, supra, this Court also used this language: "And where, as here, it is not shown that plaintiff has been guilty of any unlawful or inequitable conduct in the matter with relation to which he seeks relief, equity will not refuse to lend its aid."

Plaintiff's evidence may tend to prove acceleration of the drainage of surface waters was caused by the construction of defendant's waterways in 1957 or in 1959; however, the amount of such increase or acceleration in the flow, if any, is vague, uncertain and left to speculation. The evidence tends to establish that the land was so flat that no one knew the direction of the drainage until experts, aided by instru-

ments, determined the exact contour and pattern; that the drainage problem did not occur upon plaintiff's land until defendant widened his waterway on his east boundary in 1959. The evidence is inconclusive as to whether the rainfall was excessive in that year or how that year's rainfall compared with previous years.

Assuming, without deciding, that defendant's waterways did produce unreasonable concentration and acceleration of the natural flow of surface waters from his southeast corner, was this the cause of the channeling of surface waters across, down, and within plaintiff's eastern boundary? And what relation, if any, did the dike on plaintiff's northeast corner bear upon the right to relief which plaintiff asserts?

A photograph taken after the 1959 washout, which was by plaintiff introduced as an exhibit, tends to show a channel or break in the west end of plaintiff's dike. From the appearance in the photograph, little drainage occurred onto plaintiff's land except through this break, and the evidence tends to prove that the drainage was around the dike and through the break. The evidence shows that this dike was built in 1947. One of plaintiff's witnesses testified that the break in the west end of the dike was there in 1957; another witness testified that this break was 125 feet from the east end. Other evidence shows that the borrow ditch on the side of the county road was, from time to time, clogged, which evidence may tend to show that the east drainage, being clogged, caused the water to channel back to the west and into the break in plaintiff's dike.

Evidence tends to show that the dike was built on plaintiff's land to change the natural drainage, which caused the surface waters to back up across the road onto defendant's land and then drain to the east; that the natural drainage, prior to the dike and prior to the "built-up" fence row between plaintiff and the land to the east, would have been southeast instead of due south.

We are left to determine whether plaintiff's own acts were responsible to some extent for the present predicament.

In 93 C.J.S. Waters § 133, page 851, it is stated:

"The proprietor of a ditch, canal, aqueduct, or other artificial watercourse is liable for damages resulting from its breakage, leakage, or overflow, where this is due to his own negligence in building and maintaining such watercourse, and could have been guarded against by the exercise of reasonable care and prudence, and the existence of an intervening agency in the chain of causation will not excuse the proprietor where, by the exercise of ordinary care, he should have seen and guarded against the danger."

Under the evidence we can only conclude that in the absence of a break in plaintiff's dike, the water would have concentrated in the road until it drained to the east to the culvert and then to the south.

We are not determining the rights, if any, of Lena Linkugel as intervening plaintiff, for she did not appeal to this Court.

In 30 C.J.S. Equity § 94, p. 478, it is stated:

"He who has done inequity shall not have equity * * * equity does not adjust differences between wrongdoers * * *".

We cannot here say that plaintiff is free from any inequities. A dike was built and maintained for many years on her premises which created an inference that it diverted the natural drainage from her property to the east. A break occurred in her dike and the evidence shows that through this break the surface waters were diverted from their natural pattern to the west.

We have carefully examined the record and have weighed the evidence, and we hold that the trial court's judgment is not clearly against the weight of the evidence.

This Court on appeal in a case of equitable cognizance will consider and weigh the evidence but will not reverse the judgment of the trial court unless it is clearly against the weight of the evidence.

Affirmed.

HALLEY, V. C. J., and DAVISON, JOHNSON, WILLIAMS and IRWIN, JJ., concur.

JACKSON, J., dissents.